Edward M. O’Gorman, J.
In this article 78 proceeding, the chief attorney of the Legal Aid Society seeks an order of this court prohibiting the District Attorney of Orange County and the members of his staff from continuing the prosecution of the defendant, who was represented by the Legal Aid Society while the District Attorney was chief attorney of that society.
Petitioner contends that the present District Attorney formerly represented the defendant at his arraignment, and that prior thereto the defendant was interrogated by a Legal Aid investigator, and that in this case, as in other cases of defendants similarly affected, the District Attorney, having possibly come into possession of information concerning defendants’ cases while serving as chief attorney of the Legal Aid Society, may not now, because of the conflict of interest, participate in the prosecution of any of these defendants’ cases. He calls upon this court in the exercise of its equitable discretion to restrain such prosecution. Petitioner contends that not only should the District Attorney be disqualified, but that the disqualification should extend to all members of the District Attorney’s staff.
The relevant facts, briefly, are these: On the 21st day of *225 August, 1975, Norman Shapiro, then chief attorney of the Legal Aid Society, resigned his post with that society and was appointed District Attorney of Orange County by the Governor of the State of New York. Thereafter he disqualified himself from participation in any prosecution involving any defendant whom he had formerly represented as chief attorney for the Legal Aid Society, and designated his chief trial assistant to be in charge of all pending cases involving such Legal Aid defendants. At the same time he took certain steps (as set forth in Exhibit A attached to petitioner’s affidavit) to isolate himself from the files of such defendants and from any discussion with any member of his staff in connection therewith.
The court is advised that the prosecution of these cases has presently been discontinued because the designated chief trial attorney and other attorneys of the District Attorney’s staff feel that to proceed with those cases, in the absence of a judicial clarification of their right so to do, may subject them to a charge of ethical impropriety and to the adverse consequences which might flow therefrom. Petitioner’s Exhibit C indicates that in addition to the defendant herein, there are over 400 other defendants facing felony charges who were represented by the Legal Aid Society at the time the District Attorney was appointed.
In view of the arguments presented in the respective briefs, and the cases cited therein, the court is of the opinion that it is necessary to set forth the distinction between the various forms in which the conflict of interest question has been presented to the courts, in order that the precise issue in this case may be clearly identified.
This case is not a case of simultaneous representation of conflicting interests by the District Attorney or any of his assistants. Such a course has been almost universally determined to be improper.
Nor is this a case which involves the adequacy of the representation now being afforded the defendant or the other affected Legal Aid defendants. They are presently being represented by the chief attorney of that society and his staff, no one of whom is claimed to be now or to have been involved with the District Attorney’s office in any of their cases. Therefore, those cases (see Ann 27 ALR3d 1431-1441) dealing with conflict of interest under such circumstances are not applicable to the present situation.
*226 Further, this case does not involve participation in the prosecution by the same attorney who had prior contact with the Legal Aid defendants. This has also generally been held to be improper (see 27 CJS, District and Prosecuting Attorneys, § 12[6], subd [c], p 664).
Finally, this case does not involve a claim that the District Attorney or any member of his staff possesses particular confidential information which might be used to the detriment of the defendant, nor does it involve the claim that any confidential information in the possession of the District Attorney has been communicated to any other member of the District Attorney’s staff.
The sole issue presented by this case is whether it is necessary, in order to preserve the appearance of a fair trial in these cases (the former Legal Aid chief attorney having disqualified himself) that the court restrain all remaining members of the District Attorney’s staff from such prosecution.
In almost all cases where there has been an apparent conflict of interest on the part of the District Attorney or any particular assistant, that attorney has been barred from participation in the prosecution of the defendant affected. The instant application goes further, and seeks to have the court bar participation by all Assistant District Attorneys as well as the District Attorney himself, although there is no claim that any one of them either represented the defendants affected or has any confidential information which has been imparted to him by anyone. Petitioner seeks to bar them from continuing the prosecution solely because they are on the staff of the present District Attorney.
There are but few cases in which this broad relief has been sought. In all of these cases which have come to the court’s attention, this broad disqualification has been found to be unnecessary in order to preserve the appearance of a fair trial.
In People v Loewinger (37 AD2d 675, 676), the court stated: "we see no conflict of interest resulting in prejudice to appellant because Chief Assistant District Attorney Gellman had once represented appellant on the traffic charge out of which this incident arose. Since Gellman had no connection with the case while in the District Attorney’s office, the entire office should not be disqualified.” (Italics supplied.)
In People v Rupp (75 Misc 2d 683, 685), the court stated: *227 "Moreover, the District Attorney should not have disqualified his entire staff, since none of his assistants had any connection with the tenuous conflict of interest.”
In Hannon v State (266 So 2d 825, 829 [Ala]) a case similar to the instant case, the Court of Criminal Appeals held that the constitutional guarantee of an impartial trial was not infringed by the prosecution of the defendant, stating the following: "The record in this case clearly shows that the District Attorney did not divulge the confidential information he gained from Hannon while he was a member of the Public Defender’s Office. He had not been elected District Attorney when the grand jury indicted Hannon and had no connection therewith. He inherited for prosecution all indictments returned by grand juries in Mobile County not disposed of while his predecessor was in office. The public interest demanded that the prosecution go forward. There has been no breach of the attorney-client relationship, the privilege against disclosure has been preserved, and professional ethics, painstakingly observed, and the constitutional guarantee of a fair and impartial trial was not infringed.”
In Louisiana v Brazile (231 La 90) the court refused to disqualify the District Attorney or his remaining assistants solely because one of the assistants disqualified himself because he had represented the defendant upon a prior trial. See also Young v State (177 So 2d 345 [Dist Ct of App, Fla]).
While it is customarily presumed that confidential information which is acquired by one member or employee of a law firm is presumed to flow freely to other members and employees of that firm (see Laskey Bros, of W. Va. v Warner Bros. Pictures, 224 F2d 824), this presumption is not absolute. It does not apply to the case of a large legal aid office (People v Wilkins, 28 NY2d 53). But assuming that it does apply to this case, its only effect would be to fix the District Attorney with presumptive knowledge of the details of cases which were in his office when he was chief Legal Aid attorney. In such a situation, the cases are uniform that a prosecutor with such presumed knowledge must be disqualified (People v Moore, 30 AD2d 720; People v Clement, 278 App Div 1040). This has been done. But there is no similar presumption that the District Attorney thus disqualified has violated his duty as an attorney by passing such information along to his own assistants. In the language of Louisiana v Brazile (supra, p 94):
"Indeed, it is to be presumed that he, as a member of the *228 bar in good standing, has and will respect the defendant’s confidence.”
In this connection, this case also presents a unique circumstance in that detailed arrangements were made by the District Attorney and his staff, after his appointment and immediately prior to the assumption of his new office, which isolated the District Attorney from the files and from the members of his staff with respect to these cases.
In view of the foregoing, the question remains as to the proper course for this court to follow in these circumstances. It has long been a settled principle of law that except under unusual circumstances, a court of equity will not interfere by injunction to prevent the prosecuting authorities from bringing a criminal prosecution (see 1 Wharton’s Criminal Procedure [12th ed], § 28). Furthermore, in this case and the cases of each of the other defendants similarly situated, the accused has an adequate remedy at law in that he may interpose his contentions herein in the criminal prosecution itself. The function of this court as a court of equity is to supplement and not usurp the functions and duties of the County Court Judges who are vested with jurisdiction over these criminal cases.
Unless, therefore, the continued prosecution of these cases is clearly improper and will result in irreparable injury to the defendants, this court must decline to intervene.
The court is advised that there is a large number of defendants affected by this situation, who are now in jail awaiting trial, and that these trials are being delayed because of the belief on the part of the remaining members of the District Attorney’s staff that it may be improper for them to proceed further, in view of the issues raised by the petitioner. While these attorneys are well motivated, further delay will result in an intolerable deprivation of the rights of others to a speedy trial, and cannot be justified solely to preserve appearances where there may be no substantial basis to presume a conflict of interest.
In view of the considerations heretofore set forth, it is not improper for the Assistant District Attorneys to proceed in good faith to prosecute these cases as they have been directed to do by the District Attorney, provided they scrupulously observe the rules which isolate them from contact with the District Attorney with respect to these cases.
As far as particular cases are concerned, the result of the inquiry into any further claim based on particular evidence of *229 conflict of interest shall be left to the determination of the County Judge as each case is reached, and thereafter to the appellate courts.
In this situation, the responsibility for the decision to disqualify or not to disqualify the Assistant District Attorneys in advance of prosecution must rest on the shoulders of the District Attorney. He alone is responsible for the ethical propriety of his decision. Those under his authority who follow his directions in good faith, with no confidential information improperly acquired, should not be subject to censure.
The relief sought must be denied, and the petition will be dismissed.
In view of the importance of this question to the defendant and to the prosecutors involved, and in view of the "Digest” of the opinion of the New York State Bar Association (No. 82-75), the court will stay the prosecution of all affected defendants’ cases for a period of one week from the date hereof, in order to provide time for an application to the Appellate Division, Second Department, for a further stay, should that court deem it appropriate.