[Civ. No. 47374. First Dist., Div. One. Nov. 8, 1979.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
GARY MOTO MARTIN, Real Party in Interest.

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and John H. Sugiyama, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Thomas J. Nolan, Jr., for Real Party in Interest.

OPINION

**ELKINGTON, Acting P. J.**—We issued an alternative writ of mandate on the petition of the People, in order to determine whether the superior court abused its discretion in ordering recusal, i.e., disqualification, of the district attorney from further representation of the People in a case where one Gary Moto Martin stands charged with murder and arson of a dwelling house.

On March 12, 1979, a petition was filed with the juvenile court, under Welfare and Institutions Code section 300, alleging the arrest of Martin for the murder of his wife, who was the mother of his infant child. It was sought thereby to have the infant adjudged "a dependent child of the court" for the reasons described in subdivision (a) of section 300. The district attorney with the consent, or at the request, of the juvenile court judge and in accordance with Welfare and Institutions Code sections 351 and 681, appeared and participated in the proceedings "in the interest of the state" as representative of the child. (No contention is made that the district attorney was not properly appointed; we accordingly assume that he was.)

While the juvenile court proceedings were pending, the district attorney, on May 29, 1979, filed an information in the superior court charging Martin with the above described offenses.

Thereafter, on June 18, 1979, Martin moved for the district attorney's recusal from the criminal prosecution, "on the grounds that there exists a conflict of interest on the part of the District Attorney's office."

The sole evidentiary basis of the motion appeared in Martin's attorney's declaration as follows:

"The District Attorney's Office of the County of Santa Clara now represents the minor child, my client's daughter, in that case. Such dual representation creates a conflict of interest and raises ethical questions concerning the role of the District Attorney's Office.

"Such dual representation places the District Attorney in the above-entitled action, in a position whereby they are and could be precluded from performing their role and obligations in the criminal matter to the extent that role and obligations are inconsistent with their responsibility to my client's daughter in the juvenile proceedings."

The superior court thereafter ordered: "The Motion to Dismiss [*sic*] to recuse the District Attorney from prosecuting this case is hereby granted." (We treat the order as granting the motion to recuse only, as was obviously intended by the court.)

The instant mandate proceedings before this court followed.

On the return to our alternative writ Martin first contends, citing *People* v. *Superior Court (Stanley)*, 24 Cal.3d 622 [156 Cal.Rptr. 626, 596 P.2d 691], that the superior court's here questioned order is beyond any review, either on appeal or by extraordinary writ.

We are of the opinion that Martin misconstrues the reach of *Stanley* and that of *People* v. *Superior Court (Howard)*, 69 Cal.2d 491 [72 Cal.Rptr. 330, 446 P.2d 138], upon which *Stanley* heavily relies.

*Howard* concerned the dismissal of a criminal prosecution "in the interests of justice" (see Pen. Code, § 1385), after a jury had returned a guilty verdict. The People, denied an appeal by Penal Code section 1238, sought to overturn the dismissal and thus reestablish the verdict or obtain a new trial, by application for an extraordinary writ. The high court held that under such circumstances the writ was ordinarily unavailable to the People particularly where, as in that case, jeopardy had attached and there was "a danger of further trial or retrial" and thus, prosecutorial "harassment" of the accused. The court said: "Appellate review [by extraordinary writ] at the request of the People necessarily imposes substantial burdens on an accused, and the extent to which

such burdens should be imposed to review claimed errors involves a delicate balancing of the competing considerations of preventing harassment of the accused as against correcting possible errors." (69 Cal.2d, p. 501.) A proper "balancing of the competing considerations" satisfied the court that it should deny the requested writ.

Following *Howard,* the *Stanley* court held that in the case of *"ordinary judicial error"* (italics added) the People had no right of review by extraordinary writ where they had no statutory right of appeal. It stated (24 Cal.3d, p. 627): *"Absent compelling reasons for doing so,* this court should not provide for a writ proceeding not authorized by the Legislature" (italics added, fn. omitted); and that: "If the prosecution has not been granted by statute a right to appeal, review of any alleged error may be sought by a petition for writ of mandate *only* when a trial court *has acted in excess of its jurisdiction and the need for such review outweighs the risk of harassment of the accused."* (*Id.,* pp. 625-626; latter italics added, fn. omitted.)

We first consider whether we are here concerned with something more than "ordinary judicial error."

■ "The district attorney is the public prosecutor. [¶] He shall attend the courts, and conduct on behalf of the people all prosecutions for public offenses." (Gov. Code, § 26500.) He is the people's choice of an attorney to represent them in their public affairs. (See Gov. Code, § 24009.) "He acts as both a county officer and a state officer in the exercise of the powers for which he has been elected." (*Pitchess v. Superior Court,* 2 Cal.App.3d 653, 657 [83 Cal.Rptr. 41].) In the performance of his duties he is thus primarily responsible to the electorate. "There is [ordinarily] no review [of his power to prosecute] nor can a court control this statutory power by mandamus." (*People v. Adams,* 43 Cal.App.3d 697, 707-708 [117 Cal.Rptr. 905].)

■ It becomes manifest that an *erroneous* judicial recusal denying a district attorney the power to fully function as provided by law, and in the purposes for which he was elected, is substantially more than the "ordinary judicial error" of *Howard* and *Stanley.*

It is equally clear that the need to correct the *"extraordinary judicial error"* of the case at bench "outweighs the risk of harassment of the accused," for here there is neither risk of harassment, nor harassment in

fact, and none is alleged or claimed by Martin. The instant contention—that a public prosecutor, presumably acting for the best interest of the infant child, and thus the state, in the juvenile court proceedings, somehow and as a matter of law improperly harasses Martin by prosecuting him for the arson murder of the child's mother—is devoid of substance.

And we observe that error of the sort here contended is reasonably an act in "excess of jurisdiction." As is now well known, in determining the right to relief by extraordinary writ courts will follow the broad concept of "jurisdiction." (*Safer v. Superior Court,* 15 Cal.3d 230, 242 [124 Cal.Rptr. 174, 540 P.2d 14]; *Pacific Mut. Life Ins. Co. v. McConnell,* 44 Cal.2d 715, 725, 727 [285 P.2d 636]; *Hollywood Circle, Inc. v. Dept. of Alcoholic Beverage Control,* 55 Cal.2d 728, 733 [13 Cal.Rptr. 104, 361 P.2d 712]; *People v. Municipal Court (Gelardi),* 84 Cal. App.3d 692, 698 [149 Cal.Rptr. 30]; 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 179, pp. 706-708.) Excess of jurisdiction will be found where the trial court has abused its judicial "discretion." (*City of San Jose v. Superior Court,* 12 Cal.3d 447, 465 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; *State Farm etc. Ins. Co. v. Superior Court,* 47 Cal.2d 428, 432 [304 P2d 13]; *People v. Municipal Court (Byars),* 77 Cal.App.3d. 294, 298 [143 Cal.Rptr. 491]; *People v. Thompson,* 10 Cal.App.3d 129, 137 [88 Cal.Rptr. 753].)

We accordingly conclude that the People's petition for a writ of mandate is properly before us.

■ The remaining issue at hand is whether the superior court, in its discretion, might reasonably have concluded in respect of the district attorney that there existed a "conflict of interest which might prejudice him against the accused."

It is notable at this point that Martin concedes he *"is not claiming, in this particular case, that a conflict, in fact, has appeared in the proceeding."* Nor does he contend, as he patently could not, that some sort of confidential relationship existed between himself and the prosecutor which, as a *matter of law,* created a potential conflict of interest.

Instead, Martin's instant argument is that the district attorney's duty as a prosecutor "may very well come to conflict with the obligation of a lawyer representing a minor. . .child. . . ."

We are advised of no authority where a public prosecutor, or for that matter any public official, acting solely and conscientiously in his public capacity, becomes disqualified to act in one area of his public duty solely because of his activity in another. Martin's argument is expressly rejected by *People v. Superior Court (Greer),* 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164], upon which he principally relies. *Greer* tells us that where a district attorney engages in such diverse public duties, "both the accused and the public have a legitimate expectation that his zeal, as reflected in his tactics at trial, will be born of objective and impartial consideration of each individual case." (*Id.,* p. 267.) And it has elsewhere been held that a district attorney will be presumed to "properly and conscientiously discharge his duties" (*County of Yolo v. Joyce,* 156 Cal. 429, 433 [105 P.125]), and that "he has performed official duty properly" (*People v. Goodspeed,* 22 Cal.App.3d 690, 705, fn. 4 [99 Cal.Rptr. 696]).

■ The "conflict of interest which might prejudice [the prosecutor] against the accused" will instead exist, where in the course of his official duties he acquires a conflicting "personal" interest, or "personal or emotional involvement," or "emotional stake" in the case (*People v. Superior Court (Greer), supra,* 19 Cal.3d 255, 267 and fn. 8, 269, 270), or where there is "intense personal involvement" in his public duties (*People v. Battin,* 77 Cal.App.3d 635, 671 [143 Cal.Rptr. 731]), or where there is "personal, as opposed to purely professional. . .involvement," or "the prosecutor is improperly utilizing the criminal proceeding as a vehicle to aid" his personal or fiduciary interests (*People v. Municipal Court (Byars), supra,* 77 Cal.App.3d 294, 296).

It is notable also that the Legislature perceived no real, or potential, or probable prosecutorial conflict of interest under circumstances as are here presented. In enacting Welfare and Institutions Code sections 351 and 681 calling for the juvenile court's appointment of the district attorney for a minor when its parent is "charged in a pending criminal prosecution based upon unlawful acts committed against the minor," it was palpably aware that the same district attorney would ordinarily, if not always, be simultaneously prosecuting the parent.

And as was also said in *People v. Municipal Court (Byars), supra,* 77 Cal.App.3d 294, 299, "[o]ur own research has disclosed" no case "in which a prosecutor has properly been barred from exercising his function other than for reasons extraneous to his official duty."

*People* v. *Superior Court (Greer), supra,* 19 Cal.3d 255, upon which as noted Martin relies, extends no aid to his contention. There the facts established an intense personal and emotional involvement, apart from their official duties, of the district attorney and his staff in a murder prosecution. Prior to the murder prosecution, a clerical employee of the district attorney had somehow obtained official and confidential information which she had turned over to her son for use in a bitter child custody dispute with his estranged wife. Thereafter the district attorney's employee's son was killed, and his wife and one Greer were charged with his murder by the district attorney. After the homicide the custody dispute continued, with the employee-grandmother seeking guardianship, and the jailed mother nominating another for such an appointment. The prosecutor appeared to have injected himself into that dispute also, for "[e]vidence was introduced to show that the police acted after consultation with the district attorney's office, and gave the child into the custody of [the employee-grandmother]...." (*Id.,* p. 260.)

Under the evidence as found true by the trial court in *Greer,* the prosecutorial function had been exercised "for reasons extraneous to his official duty" and he was properly recused from the murder prosecution. ██ In the case at bench evidence supportive of a similar recusal is completely lacking.

For these several reasons we conclude that the People are entitled to the relief they seek.

The peremptory writ of mandate will issue.

Newsom, J., concurred.

**GRODIN, J.**—I concur in the issuance of a peremptory writ. The real party in interest concedes that the dual roles of the district attorney in this case were, at least impliedly, approved by the Legislature, but argues that the legislative approval is constitutionally defective in that it creates a potential for conflict of interest such as would, or could, deprive his client of due process of law. Real party does not suggest, however, any plausible scenario for conflict that would operate to his detriment. Rather, the examples he offers of possible conflict (that the child's welfare, for example, might require that the father be set free, or granted probation) suggest positions by the district attorney that would

operate either to the benefit of the defendant or the detriment of the child. Such potential for conflict might well provide a basis for recusal of the district attorney in the juvenile court matter, but not in the criminal proceeding.

The petition of the real party in interest for a hearing by the Supreme Court was denied January 3, 1980. Bird, C. J. was of the opinion that the petition should be granted.