[Civ. No. 58348. Second Dist., Div. One. May 23, 1980.]

BLAKE CHADWICK et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

[Civ. No. 58347. Second Dist., Div. One. May 23, 1980.]

DAVID GODWIN et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Glen Mowrer, Jr., Public Defender, Barbara J. Beck and James L. Crowder, Deputy Public Defenders, for Petitioners.

No appearance for Respondent.

Stanley M. Roden, District Attorney, and Gerald McC. Franklin, Deputy District Attorney, for Real Party in Interest.

OPINION

EPSTEIN, J.*—In these consolidated proceedings, the Public Defender of Santa Barbara County seeks to disqualify the entire district attorney's office of that county from prosecuting some 39 pending felony cases. The defendants (petitioners here) were represented by James B. Jennings, then a deputy public defender of Santa Barbara. Mr. Jennings terminated his employment with the public defender on December 21, 1979. He accepted an appointment as a deputy district attorney, the position he now holds, on December 24, 1979. His entire assignment is to represent the People in juvenile court matters heard in Santa Maria.

We have concluded that the trial judges acted within their discretion in denying the public defender's motions to recuse the district attorney's office.

PROCEDURAL HISTORY

Following Mr. Jennings' appointment as a deputy district attorney, the public defender presented two separate recusal motions seeking to disqualify the district attorney from prosecuting pending cases in which Mr. Jennings had represented defendants. Each motion was for a group of cases, and each was heard by a different judge. The first motion was on behalf of 12 (later 14) defendants (the *Godwin* group), and the second on behalf of 25 others (the *Chadwick* group).

The motions were considered on the basis of declarations, points and authorities and oral argument. In addition, the Attorney General[1] filed

---

*Assigned by the Chairperson of the Judicial Council.

[1]As presumptive successor prosecutor if the recusal motions had been granted. (*People* v. *Superior Court* (*Greer*) (1977) 19 Cal.3d 255, 270-271 [137 Cal.Rptr. 476, 561 P.2d 1164].)

a memorandum and argued in the *Godwin* group, and Mr. Jennings testified at the hearing in the *Chadwick* group.

Both motions were denied. The cases are before us following direction by the Supreme Court that we grant alternative writs of mandate and stays pending our review.[2]

Because of the identity of facts and issues, we have consolidated the cases.

### Factual Summary

During his more than three and one-half years of service as a deputy public defender, Mr. Jennings was in charge of felony cases in the north county area. He supervised two other deputies and a support staff at the Public Defender's office in Santa Maria.

As a trial deputy, he acquired information within the attorney-client privilege. (Evid. Code, § 952.) Much of it was never committed to writing, but retained only in Mr. Jennings' memory. Understandably, successor counsel have an on-going need to confer with Mr. Jennings about the 39 cases.

Mr. Jennings is willing to do this, subject only to consent by his former clients. Indeed, he already has conferred with successor counsel about these cases.

The district attorney's office has been at some pains to isolate Mr. Jennings from any prosecutorial involvement in the cases. As we have seen, Mr. Jennings' assignment is solely to juvenile court cases. He expects this assignment to last for six months, the usual tour. He has no connection with the prosecution of the cases he had handled as a deputy public defender.[3] He has sworn not to discuss these cases with prosecutorial personnel.

Mr. Jennings has no supervisorial or policymaking role in the prosecutor's office. His own office is located in the Santa Maria juvenile court building, which is separate from the building that houses the dis-

---

[2]Initial petitions for prerogative mandate and ancillary relief had been denied by this court.

[3]There may be rare instances in which a juvenile case is presented on which Mr. Jennings had made a policy decision, usually involving a conflict issue, while in the public defender's office. Only two such cases have been identified. These and any others that may arise will be assigned to another deputy and Mr. Jennings will not participate in them.

trict attorney's office. He is not supervised by the assistant district attorney in charge of north county operations, Mr. Sutton. Instead, the organizational chart of the office has been modified to place Mr. Jennings under the supervision of Mr. Sneddon, the deputy in charge of south county criminal operations.

It will be necessary for Mr. Jennings to be in and out of the district attorney's office in Santa Maria almost daily. His secretary is located there, and he must visit the office for dictation, and to pick up and drop off files and messages.[4]

The record is replete with references to Mr. Jennings' high standing and integrity. In a declaration filed in the *Godwin* cases, the public defender stated that he had known Mr. Jennings for 10 years and "considered him to be a person of high ethical and moral character. I have never known him to act improperly and have no reason to believe that he will do so in his present capacity." The public defender's briefs before this court disavow contention that any attorney involved in these cases will act improperly, and concede that both Mr. Sutton and Mr. Jennings are respected members of the bar.

Only one of the two judges commented in the recusal motions, and he was unequivocal in his praise for both Mr. Sutton and Mr. Jennings.

DISCUSSION

*The Trial Courts Acted Within Their Discretion in Denying Petitioners' Motions to Recuse.*

1. *Authority and Exercise of Discretion.*

*Greer*, decided three years ago, is the leading case on recusal of a prosecutor. In that case, our Supreme Court reviewed the competing arguments, including separation of powers, and concluded that "trial courts have the authority to recuse prosecuting attorneys in appropriate circumstances." (19 Cal.3d at p. 258.) The power to do so is in-

---

[4]This is the only material evidence not presented at both the *Godwin* and *Chadwick* hearings. It was presented only in *Chadwick*, the second group filed. We are satisfied that its omission from the *Godwin* hearing would not have changed the result in those cases. In oral argument before this court, all counsel stipulated that evidence presented at either hearing may be considered for both groups of cases.

herent, and is codified in Code of Civil Procedure section 128, subdivision 5.[5]

The court reviewed the due process right of persons accused of crime to a fair and impartial trial, the obligation of the prosecution as well as the trial court to respect that right, and the need for prosecutorial impartiality. Such impartiality is necessary not only to assure fairness to the accused but also to sustain public confidence in the integrity and impartiality of the criminal justice system. (See *People v. Rhodes* (1974) 12 Cal.3d 180, 185 [115 Cal.Rptr. 235, 524 P.2d 363]; see also *Berger v. United States* (1935) 295 U.S. 78, 88 [79 L.Ed. 1314, 1321, 55 S.Ct. 629].)

The court cited situations in which participation of a particular prosecutor would be clearly improper: prosecution of a former client, without consent, for an offense about which the prosecutor obtained information from the former client that is protected by the attorney-client privilege (see, e.g., *People v. Gerold* (1914) 265 Ill. 448 [107 N.E. 165]); trying a defendant against whom the prosecutor is involved in civil litigation (*Ganger v. Peyton* (4th Cir. 1967) 379 F.2d 709).[6]

*Greer* itself involved a murder prosecution in which "[t]he victim of the homicide was the son of a member of the district attorney's staff who worked in the very office in which the prosecution was being prepared." (*People v. Superior Court (Greer)*, *supra*, 19 Cal.3d at p. 270.) On these facts, the court found that it "cannot conclude that the trial judge abused his discretion in disqualifying the district attorney." (*Id.*, at p. 269.)

---

[5]"Every court shall have power:. . . 5. To control, in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto."

[6]Many of the cases are collected in Annotation, Disqualification of Prosecuting Attorney on Account of Relations With Accused (1970) 31 A.L.R.3d 953; see also footnote 10 in *Greer* (19 Cal.3d at p. 269). To these lists may be added such cases as *Com. v. Tabor* (1978) 376 Mass.811 [384 N.E.2d 190] (prosecutor in murder-robbery case also representing victim-widow in related victims of crime suit) and *People v. Curry* (1971) 1 Ill.App.3d 87 [272 N.E.2d 669, 671-672] (former public defender who represented defendant when guilty plea entered and probation granted, now prosecuting him for violation of the probation). See also, *People v. Jiminez* (1974) 187 Colo. 97, 101 [528 P.2d 913, 915] and *People v. Rhymer* (1975) 32 Ill.App.3d 431 [336 N.E.2d 203, 204]. None of these cases addresses the problem of vicarious disqualification presented in this case.

"It is important to note that *Greer* merely states that the trial court *may*, within its discretion, excuse the district attorney, not that it must. Because the decision whether or not to disqualify is within the discretion of the court, it may be overturned on appeal only if this discretion is abused." (*People* v. *Battin* (1978) 77 Cal.App.3d 635, 671 [143 Cal. Rptr. 731, 95 A.L.R.3d 248], *cert. den.* (1978) 439 U.S. 862 [58 L.Ed. 2d 171, 99 S.Ct. 183] [court's italics]; see also *People* v. *Superior Court (Martin)* (1979) 98 Cal.App.3d 515, 519 [159 Cal.Rptr. 625].)

■ In one of the two groups of cases before us (the *Godwin* group), the factual issues on recusal were resolved by the trial court on the basis of competing declarations. Such factual resolutions are binding on appeal. (*Jacuzzi* v. *Jacuzzi Bros., Inc.* (1963) 218 Cal.App.2d 24, 27-28 [32 Cal.Rptr. 188].) In the other (the *Chadwick* group) the factual issues were decided on the basis of declarations and testimony (of Mr. Jennings), and the trial court resolution is no less binding.

Moreover, the cases are before us on petitions for writ of mandate. "Thus, we can overturn the determination of the trial court only if that court acted in excess of its jurisdiction or there is no rational basis in the record supporting the manner in which the court exercised the power and discretion vested in it." (*People* v. *Municipal Court (Byars)* 77 Cal.App.3d 294, 298 [143 Cal.Rptr. 491].)

■ Finally, particular caution is in order before an entire prosecutorial office, as distinguished from a particular prosecutor in that office, is recused. (See, *People* v. *Superior Court (Martin)*, *supra*, 98 Cal. App.3d at p. 519; *State* ex rel. *Goldsmith* v. *Super. Ct. of Hancock Cty.* (1979) — Ind. — [386 N.E.2d 942, 945].)

### 2. *"Actual" Conflict of Interest.*[7]

No one disputes the conclusion that Mr. Jennings is precluded from prosecuting any of the clients he represented in these cases. Such unconsented representation would be a gross violation of professional ethics and due process. (See, e.g., *Yorn* v. *Superior Court* (1979) 90

---

[7]Petitioners divide their argument into contentions concerning "conflict of interest" and "appearance of impropriety." As developed in petitioners' briefs, the first is directed towards actual betrayal of client confidences or divided loyalty, and the second towards a more generalized appearance of unfairness. Analytically, each is an aspect of the same root principle concerning representation by counsel. Nevertheless, the division suggested is an appropriate vehicle to address the issues presented, and we follow it.

Cal.App.3d 669, 676 [153 Cal.Rptr. 395]; Bus. & Prof. Code, § 6068, subd. (e); Rules Prof. Conduct, rules 4-101 and 5-102; and see American Bar Association (ABA), Standards Relating to the Prosecution Function and the Defense Function, std. 1.2, and cases collected in Annot. (1970) 31 A.L.R.3d 953; cf. *Comden* v. *Superior Court* (1978) 20 Cal.3d 906, 915 [145 Cal.Rptr. 9, 576 P.2d 971], cert. den. (1978) 439 U.S. 981 [58 L.Ed.2d 652, 99 S.Ct. 568].)

As we have seen, Mr. Jennings not only will not prosecute these cases, he has been entirely removed from them. He has sworn not to betray his professional obligations, and under the circumstances presented, it may be presumed that he will not.[8]

But we need not rely on presumption. Petitioners have acknowledged that Mr. Jennings will not violate his professional obligation by revealing client confidences or strategy, or otherwise cooperating in the prosecution of his former clients.

Nevertheless, petitioners present two arguments for the position that the district attorney's office should still be disqualified.

a. *Imputed Knowledge.*

■ Petitioners would have the court apply the rule of imputed knowledge among lawyers in a law firm, to the district attorney's office. The imputed knowledge theory holds that knowledge by any member of a law firm is knowledge by all of the attorneys in the firm, partners as well as associates. (See, *In re Airport Car Rental Antitrust* (N.D.Cal. 1979) 470 F.Supp. 495, 505-506; *Laskey Bros. of W. Va., Inc.* v. *Warner Bros. Pictures* (2d Cir. 1955) 224 F.2d 824, 826, cert. den. (1956) 350 U.S. 932 [100 L.Ed. 814, 76 S.Ct. 300].)

The principal codification of the rule occurs in the ABA's Disciplinary Rules (hereafter, DR), DR 5-105(D): "If a lawyer is required to decline employment or to withdraw from employment under a disciplinary rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment."

---

[8]See *Fox* v. *Shapiro* (1975) 84 Misc.2d 223 [375 N.Y.S.2d 945, 950]; *State* v. *Brazile* (1956) 231 La. 90 [90 So.2d 789, 790]; *Holloway* v. *Arkansas* (1978) 435 U.S. 475, 485-486 [55 L.Ed.2d 426, 435, 98 S.Ct. 1173, 1179].

This rule has been limited as it applies to private firms,[9] and rejected in the context of government law offices.

In a formal opinion, the ABA Standing Committee on Ethics and Professional Responsibility, the authoritative interpreting body for the disciplinary rules, concluded that DR 5-105(D) and related rules (DR 4-101, DR 9-101(B)), are inapplicable to government lawyers.[10] The committee pointed out that the relationships among lawyers within a governmental agency are different from those among partners and associates of private firms. The former do not have the financial interest of the latter. And in the case of prosecutorial offices, the attorneys have an affirmative obligation to seek justice, not merely to convict.[11]

The theory of imputed knowledge by attorneys in a governmental law office has been considered and rejected in a number of recent cases. *In re Charles L.* (1976) 63 Cal.App.3d 760 [132 Cal.Rptr. 840], a pre-*Greer* case, is particularly close on its facts. After arraignment but before a Welfare and Institutions Code section 602 adjudication hearing, the attorney representing a minor charged jointly with appellant joined the Los Angeles District Attorney's office. We refused to impute his knowledge about the case to the entire Los Angeles office, and found no conflict of interest in the continued participation of that office. The particular attorney, of course, did not participate in the prosecution.

In *United States* v. *Weiner* (9th Cir. 1978) 578 F.2d 757, 767, cert. den. 439 U.S. 981 [58 L.Ed.2d 651, 99 S.Ct. 568], the Ninth Circuit pointed out that "[p]roblems concerning the imputation of knowledge to government attorneys are *sui generis*. A free flow of information may be assumed to exist within a law partnership, but the size and diversity of government agencies makes similar assumptions about agencies

---

[9]See: *In re Airport Car Rental Antitrust, supra,* 470 F.2d 495 (New York firm associated Hawaiian firm that proved to have a conflict; latter, not former, disqualified); *American Can Company* v. *Citrus Feed Co.* (5th Cir. 1971) 436 F.2d 1125 (new partners of vicariously disqualified, former partner not disqualified); *Laskey Bros. of W. Va., Inc.* v. *Warner Bros. Pictures, supra,* 224 F.2d at page 827 (after partnership dissolved, inference of access to confidential information from association with former partner is rebuttable).

[10]Formal opinion 342, issued November 24, 1975, published in 62 A.B.A. J. page 517 (Apr. 1976).

[11]*Id.,* page 521. See Liebman, *The Changing Law of Disqualification: The Role of Presumption and Policy* (1979) 73 Nw.U.L.Rev. 996, 1019, 1020; *Kesselhaut* v. *United States* (Ct.Cl. 1977) 555 F.2d 791, 793.

wholly unrealistic."[12] Courts have applied the same reasoning to reach a similar result in construing rule 2-111(A)(4) (bar member who knows or should know that he "ought to be called as a witness on behalf of the member's client in litigation concerning the subject matter of the employment" is disqualified absent written consent of the client) to be inapplicable to public prosecutors. (*People* ex rel. *Younger* v. *Superior Court (Rabaca)* (1978) 86 Cal.App.3d 180, 192-203 [150 Cal.Rptr. 156]; see also, *State* ex rel. *Goldsmith* v. *Super. Ct. of Hancock Cty. supra*, which followed *Rabaca*, and Annot. (1974) 54 A.L.R.3d 100, 162.)

We have found only one court that has expressly considered and applied the rule of imputed knowledge to a prosecutorial office. The Arizona court applied it on the basis of preventing an appearance of impropriety in *State* v. *Latigue* (1972) 108 Ariz. 521 [502 P.2d 1340].[13]

We believe the ABA's interpretation of the imputed knowledge rule to be the better view. Only by a particularly strained and artificial reading could the rule apply in this case. Here, petitioners affirmatively represent that their former attorney will not betray confidential information. Yet, we are asked to disqualify the entire office of prosecutor on the basis that such information should be deemed to be shared, however much we know that it is not. We decline to reach so drastic a result on so fictitious a basis.

Finally, petitioners seek to buttress their imputed knowledge argument by the fact that the district attorney is, by name, attorney of record in criminal prosecutions, although he usually appears through deputies. They point out that the Attorney General has concluded that if the public defender is prohibited from representing a particular defendant due to a conflict of interest, his deputies cannot do so either, even if they are in a separate division of the office. (59 Ops.Cal.Atty. Gen. 27 (1976).) Petitioners argue that the same rule should apply to the district attorney, apparently on the theory that so long as the organizational lines of the office run to a "tainted" deputy at some point, the infection must be deemed to affect the entire office.

---

[12]See also *Pisa* v. *Com.* (1979) — Mass. — [393 N.E.2d 386, 388]; *United States* v. *Standard Oil Company* (S.D.N.Y. 1955) 136 F.Supp. 345, 364.

[13]*Latigue* was followed without discussion of the imputed knowledge principle in *State* v. *Chambers* (1974) 86 N.M.383 [524 P.2d 999].

We know of no authority for such a formulistic approach, and none is offered to us. The facts of our case provide ample support for the trial courts to conclude that Mr. Jennings is sufficiently isolated from the prosecution of his former clients so as to rebut any inference of assistance. And, as we have seen, petitioners themselves have attested to his fidelity.

b.  *Business and Professions Code, section 6131.*

■  Petitioners argue that their former counsel is precluded by law from conferring with successor defense counsel. Since, they say, most of the information he acquired about their cases is in his memory rather than on· paper, this isolation from their new counsel will interfere with effective representation.

If Mr. Jennings were precluded by law from conferring with successor counsel about information he gathered in the attorney-client confidence on behalf of his former clients, issues of due process dimension would be presented, but we find no such prohibition.

The asserted source of the preclusion is Business and Professions Code section 6131.[14]

Petitioners see in subdivision (a) a powerful *in terrorem*: Mr. Jennings can confer with successor counsel only on penalty of committing a misdemeanor and disbarment. That result would occur, it is claimed, because any conferring by him would amount to an indirect aid to the defense.

That is not what the statute provides. It is aimed at the formerly widespread practice of part-time prosecutors who carried on private law

[14]"Every attorney is guilty of a misdemeanor and, in addition to the punishment prescribed therefor, shall be disbarred:

"(a) Who directly or indirectly advises in relation to, or aids, or promotes the defense of any action or proceeding in any court the prosecution of which is carried on, aided or promoted by any person as district attorney or other public prosecutor with whom such person is directly or indirectly connected as a partner.

"(b) Who, having himself prosecuted or in any manner aided or promoted any action or proceeding in any court as district attorney or other public prosecutor, afterwards, directly or indirectly, advises in relation to or takes any part in the defense thereof, as attorney or otherwise, or who takes or receives any valuable consideration from or on behalf of any defendant in any such action upon any understanding or agreement whatever having relation to the defense thereof.

"This section does not prohibit an attorney from defending himself in person, as attorney or counsel, when prosecuted, either civilly or criminally."

practices in addition to their public service. Subdivision (a) prohibits the partner of a prosecutor from aiding the defense in a matter being prosecuted. It applies only to *private* partners, not to persons whose only association with a prosecutor is as a deputy. (See, *People* v. *Rhodes, supra,* 12 Cal.3d at p. 183, fn. 3.)

3.  *Appearance of Impropriety.*

Moving from an "actual" conflict of interest, petitioners contend that a prosecutorial office should be recused when the circumstances so demonstrate an appearance of impropriety as to endanger the credibility of the justice system.[15]

As we have seen, there are instances in which recusal of an entire prosecutor's office is justified in order to protect the integrity of the judicial process. But such cases are rare. (See *People* v. *Superior Court (Greer), supra,* 19 Cal.3d at p. 269; *People* v. *Battin, supra,* 77 Cal. App.3d at p. 670.)

There are only two such reported cases in California, and each upheld the exercise of trial court discretion to recuse the office. One of these is *Greer*, already discussed. The other is *Younger* v. *Superior Court (Warren)* (1978) 77 Cal.App.3d 892 [144 Cal.Rptr. 34]. In that case, a private attorney with an extensive criminal law practice was appointed assistant district attorney of Los Angeles, the third ranking position in the office. While he had no direct involvement in the prosecution of his former clients, there were two aspects of his work that presented an appearance of conflict. He attended weekly executive meetings at which prosecutorial policy was discussed ("which could ultimately affect, perhaps substantially, the prosecution" of the cases he had handled), and he participated in the evaluation of deputies for promotion, including those who were to prosecute his former clients. Under these circumstances, it was held, the trial court did not abuse its discretion in recusing the district attorney's office.

---

[15]Noting the remarks by the trial judge in the *Godwin* group about Mr. Jennings' high standing in the community, petitioners argue that the court ignored their argument about appearance of impropriety. There is no support for that contention. The issue was fully briefed before the trial court. The trial judge began his remarks by pointing out that the court "is authorized to exercise its discretion in light of a factual context," and stated that "it is the policy of the law to avoid appearance" of impropriety.

By contrast, Mr. Jennings holds no policy or personnel evaluation authority, and the trial courts exercised their discretion not to recuse his office.

Other cases have upheld trial court discretion in refusing to recuse an entire office: *In re Charles L., supra*, 63 Cal.App.3d 760 (nonprosecuting deputy had represented the person charged with appellant); *People v. Superior Court (Martin), supra*, 98 Cal.App.3d 515, (no recusal of office because facts charged by district attorney in prosecuting father formed basis for dependency petition under Welf. & Inst. Code, § 300); *People v. Municipal Court (Henry)* (1979) 98 Cal.App.3d 690 [159 Cal.Rptr. 639] (no recusal in malicious mischief, tire slashing case based on fact that other deputies in the office had suffered similar vandalism); *People v. Battin, supra*, 77 Cal.App.3d at p. 671 (suit pending by employees' association against county seeking pay raises to prosecutors, among others; asserted animosity by prosecutor toward defendant, a county supervisor, and testimony by member of prosecutor's staff at trial); and *People v. Partlow* (1978) 84 Cal.App.3d 540, 557 [148 Cal. Rptr. 744] (deputy involved in setup of case).

In three reported cases, trial courts were held to have abused their discretion by granting motions to recuse: *People v. Municipal Court (Byars), supra*, 77 Cal.App.3d 294 (city attorney prosecuting defendant also representing city against his civil suit based on same episode); *People v. Superior Court (Hollenbeck)* (1978) 84 Cal.App.3d 491 [148 Cal.Rptr. 704] (deputy might testify at trial); and *People ex rel. Younger v. Superior Court (Rabaca), supra*, 86 Cal.App.3d 180 (nonprosecuting deputy might testify at trial).

Of all the states that have considered the issue, only two, Arizona and New Mexico, have disqualified an entire prosecutorial office because of a conflict by one of its members.

In *State v. Latigue, supra*, 108 Ariz. 521 [502 P.2d 1340], the chief deputy county attorney had represented defendant. The court concluded that this disqualified the entire office. (The chief deputy held a supervisory position, but the court declined to place its decision on that fact.) And in *State v. Chambers, supra*, 86 N.M. 383 [524 P.2d 999], the New Mexico court reached a similar result when defendant's attorney became an assistant district attorney.

Later cases in these states demonstrate a disinclination to extend the *Latigue* ruling.[16]

The overwhelming weight of national authority rejects recusal of the entire office. (See *Fox* v. *Shapiro, supra,* 84 Misc.2d 223 [375 N.Y.S. 2d at p. 948]; *People* v. *Cruz* (1978) 60 App.Div.2d 872 [401 N.Y.S.2d 267]; *People* v. *Loewinger* (1971) 37 App.Div.2d 675 [323 N.Y.S.2d 98, 100-101]; *People* v. *Washington* (1976) 52 App.Div.2d 984 [383 N.Y.S.2d 422, 424]; *Pisa* v. *Commonwealth, supra,* — Mass. — [393 N.E.2d 386, 388]; *State* v. *Cline* (1979) — R.I. — [405 A.2d 1192, 1204-1207]; *Sapienza* v. *Hayashi* (1976) 57 Hawaii 289 [554 P.2d 1131, 1135-1136]; *Mattress* v. *State* (Tenn.Crim. 1977) 564 S.W.2d 678, 680; *State* v. *Brazile, supra,* 231 La. 90 [90 So.2d 789]; *State* v. *Brown* (La. 1973) 274 So.2d 381, 383; *State* v. *Bell* (La. 1977) 346 So.2d 1090, 1099-1100; *Surrette* v. *State* (Fla.App. 1971) 251 So.2d 149, 151; *Thompson* v. *State* (Fla. 1971) 246 So.2d 760, 763; *Hannon* v. *State* (1972) 48 Ala.App. 613 [266 So.2d 825, 829].)[17]

■ To all of this petitioners respond that Santa Barbara is a small county,[18] that Santa Maria is a small community[19] within it, and that cases arising in the context of large communities and law offices, such as *In re Charles L., supra,* 63 Cal.App.3d 760 (Los Angeles) and *People* v. *Superior Court (Rabaca), supra,* 86 Cal.App.3d 180 (San Bernardino) should not apply. They seem to argue for a sort of judicial notice that in small communities everyone knows everything that is going on, and hence, the prosecuting deputies are bound to gain access to confidences held by Mr. Jennings.

---

[16]See *State* v. *Lacquey* (1977) 117 Ariz. 231 [571 P.2d 1027, 1030]; *State* v. *Rupp* (1978) 120 Ariz. 490 [586 P.2d 1302, 1308]; *State* v. *Lozano* (1978) 121 Ariz. 99 [588 P.2d 841, 843]; *State* v. *Lucas* (1979, App.) 123 Ariz. 39 [597 P.2d 192] (factually similar to *People* v. *Municipal Court (Byars), supra,* 77 Cal.App.3d 294; the court cited *People* v. *Battin, supra,* 77 Cal.App.3d 635 for the proposition that disqualification of the prosecutor's office "is within the discretion of the trial court and will be overturned only if the discretion is abused"; the trial court's refusal to recuse was upheld); *State* v. *Smith* (1979) 123 Ariz. 231 [599 P.2d 187, 191]; *State* v. *Bustamante* (1978) 91 N.M. 772 [581 P.2d 460].

[17]See also, *State* v. *Miner* (1969) 128 Vt. 55 [258 A.2d 815, 817-819]; *United States* v. *Weiner, supra,* 578 F.2d 757, 767; *State* ex rel. *Goldsmith* v. *Super. Ct. of Hancock Cty, supra,* — Ind. — [386 N.E.2d 942]; *Brinkman* v. *State* (1979) — Nev. — [592 P.2d 163, 164].

[18]On July 1, 1977, only 15 counties exceeded Santa Barbara County's population of 289,400, and 42 counties had a smaller population. (Cal. Statistical Abstract, 1979, p. 9 (State of Cal., 1979).)

[19]On January 1, 1979, Santa Maria, with 37,150, was the second most populous city in Santa Barbara County. (*Ibid.,* p. 14.)

We could respond by pointing out that not all of the cases arose from a major metropolitan area (for example, *People* v. *Superior Court* (*Hollenbeck*), *supra*, 84 Cal.App.3d 491, comes from San Luis Obispo County). Or that there is simply no basis to judicially notice the likelihood of unprofessional gossip.

But the principal fault in petitioners' argument is more fundamental. It is that there is no reasoned basis for an appellate court to draw a line for mandatory recusal of a prosecutor's entire office based on the relative size of the county and communities it serves.

Petitioners' argument, if accepted, would result in recusal of the Los Angeles District Attorney as surely as it would the Santa Barbara District Attorney for the entire caseload of any transferring deputy public defender.

█ Conceivably, there may be cases in which the particular factual setting requires recusal of an entire office due to a conflict of one of its nonsupervisorial members. But it is the trial judges who are in the best position to decide whether these circumstances exist; surely we are not. We find no abuse of discretion in their decisions not to direct recusal in the cases presented here.

### CONCLUSION

The petitions for writs of mandate are denied, the alternative writs discharged, and the stays dissolved.

Lillie, Acting P. J., and Hanson, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied July 23, 1980. Bird, C. J., and Mosk, J., were of the opinion that the application should be granted.