[Civ. No. 19586. Third Dist. Oct. 27, 1980.]

MICHAEL LYNN LOVE, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Kenneth M. Wells, Public Defender, and Michael G. Arkelian, Assistant Public Defender, for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and W. Scott Thorpe, Deputy Attorneys General, for Real Party in Interest.

OPINION

**REYNOSO, J.**—Petitioner Michael Lynn Love seeks a peremptory writ of mandate directing the respondent superior court to grant his motion to recuse the office of the District Attorney of Sacramento County in a pending criminal action. We grant the writ. We conclude that, under the circumstances of this case, recusal of the major crimes section of the district attorney's office, and not the entire office, is the appropriate remedy.

I

Petitioner stands accused, among other things, of two counts of first degree murder with allegations of special circumstances. (Pen. Code, §§ 187, 190.2.) Since petitioner was a juvenile at the time of the alleged murders he is not subject to the death penalty; however, the criminal

proceedings could result in a sentence of life imprisonment without the possibility of parole. (Pen. Code, §§ 190.2-190.5.)

In August 1979, Michael G. Arkelian, an assistant public defender in the county public defender's office, was assigned to serve as defense attorney for petitioner. David Miller, a law student working as a legal research assistant, was assigned full time to assist Arkelian in the preparation and investigation of the case against petitioner. Miller worked with Arkelian on petitioner's case for four months. He came to be intimately involved with and knowledgeable about every aspect of the case. Of course, he was privy to confidential information vital to the defense.

Miller passed the California Bar Examination and was hired as a deputy district attorney. He was assigned to the major crimes section, the very section that was responsible for the prosecution of petitioner. That section consists of six attorneys who specialize solely in the prosecution of complex homicide cases. Five of the attorneys in the major crimes section are senior attorneys with extensive experience. The sixth attorney, the position to which Miller was assigned, does not do trial work but rather is assigned to assist the other five attorneys with research and preparation of cases for trial.

In early February 1980, Arkelian became aware that Miller was working for the major crimes section of the district attorney's office. He moved for recusal of the entire office due to this conflict. When the supervisor of the major crimes section became aware of the problem she talked to the chief deputy district attorney; consequently, Miller was transferred to the misdemeanor jury trial section. The misdemeanor section is located on a floor different from the major crimes section, and there is little, if any, interaction between the sections.

Deputy District Attorney Kit Cleland was assigned to prosecute the case against petitioner. He first met Miller during petitioner's preliminary hearing when he was assisting Arkelian with the defense. When Miller was employed by the district attorney and assigned to the major crimes section Cleland did not initially associate him with the case against petitioner. Cleland did not discuss the facts, circumstances, or merits of the case against petitioner with Miller, nor was Miller involved in the case against petitioner in his research capacity.

While assigned to the major crimes section Miller did not work with Cleland on any of his cases, and notably not on the case against peti-

tioner. He has not discussed the facts, circumstances, or merits of the case with any member of the district attorney's office; his only discussion of the case was over the possible conflict of interest. Miller has sworn that he will never discuss the case with members of the district attorney's office.

When the motion to recuse came for hearing the trial court indicated that it found no evidence of bad faith on the part of the district attorney's office, and that it believed and found that Miller had not been involved in the case against petitioner. The court nevertheless expressed extreme concern over the appearance of impropriety. The court requested additional briefing and took the matter under submission.

In ruling on the motion the trial court stated that the question, as posed by the parties, was whether the entire district attorney's office should be recused. The court declined to recuse the entire office, and denied the motion. After doing so, however, the court offered a continuance to the defense to allow an opportunity for the filing of a petition for an extraordinary writ. When the prosecutor objected to a continuance the court stated: "Well, Mr. Cleland, in all due reference [*sic*] to you, I've given my best view of this matter. However, I think it raises a sufficient question which can be—which should be determined if the defendant so desires, by the Court of Appeal." Petitioner then commenced this proceeding. We issued an alternative writ of mandate and stayed further proceedings pending our decision.

## II

■ It is manifest that a trial court has the power to recuse a prosecutor. (*People v. Superior Court (Greer)* (1977) 19 Cal.3d 255, 261-265 [137 Cal.Rptr. 476, 561 P.2d 1164].) Moreover, in an appropriate case, a trial court may recuse an entire district attorney's office. (*Ibid.; Younger v. Superior Court* (1978) 77 Cal.App.3d 892 [144 Cal. Rptr. 34].) Particular caution should be exercised, however, before an entire office, as opposed to a particular prosecutor, is recused. (*Chadwick v. Superior Court* (1980) 106 Cal.App.3d 108, 115 [164 Cal.Rptr. 864]; *People v. Superior Court (Martin)* (1979) 98 Cal.App.3d 515, 519 [159 Cal.Rptr. 625].) The decision on motion to recuse is entrusted to the discretion of the trial court, and its decision will be overturned only if that discretion is abused. (*Chadwick v. Superior Court, supra,* 106 Cal.App.3d 108; *People v. Battin* (1978) 77 Cal.App.3d 635, 671 [143 Cal.Rptr. 731, 95 A.L.R.3d 248].)

Petitioner does not assert that an actual impropriety has taken place. Instead, he asserts that Miller might be called as a defense witness due to his involvement in the investigation of the case. Further, he argues that in any event the appearance of impropriety compels recusal of the district attorney's office.

The contention that the possibility that Miller might be called as a witness requires recusal of the entire office is easily disposed of. ■ The general rule is that an entire office should be not be recused merely because one or more of its members might be called as witnesses for the defense. (*People* v. *Superior Court* (*Hollenback*) (1978) 84 Cal.App.3d 491, 500-501 [148 Cal.Rptr. 704].) The burden is upon the defendant to establish that recusal is necessary due to such a possibility. Petitioner, in our view, has not sustained such a burden. We cannot find an abuse of the trial court's discretion on this ground.

■ We are concerned, as was the trial court, with the appearance of impropriety inherent in this situation. In *People* v. *Rhodes* (1974) 12 Cal.3d 180, at page 185 [115 Cal.Rptr. 235, 524 P.2d 263], the Supreme Court observed: "It is essential that the public have absolute confidence in the integrity and impartiality of our system of criminal justice. This requires that public officials not only in fact properly discharge their responsibilities but also that such officials avoid, as much as is possible, the *appearance* of impropriety." (Italics in original; fn. omitted.) The court relied, in part, upon that statement in holding that a trial court has the power to recuse a prosecutor. (*People* v. *Superior Court* (*Greer*), *supra*, 19 Cal.3d at p. 268.) The potential for the appearance of impropriety is an important consideration in a recusal motion.

We have not found any appellate decision directly controlling on these facts, but the reasoning of a number of prior decisions is instructive. In *In re Charles L.* (1976) 63 Cal.App.3d 760 [132 Cal.Rptr. 840], a minor argued that the Los Angeles County District Attorney's office was disqualified from handling his case because a former counsel for a codefendant had become employed by that office. The deputy district attorney handling the case stated that he had not discussed the case with the former defense counsel, and in fact knew nothing of him. Moreover, the former defense counsel had not represented the appellant and there was nothing to suggest that the counsel had acquired confidential information or had been privy to attorney-client communications. Under such circumstances the Court of Appeal held that the entire dis-

trict attorney's office was not disqualified from handling the case. (*Id.*, at pp. 765-766.)

The Los Angeles County District Attorney's office was again the subject of a recusal motion in *Younger* v. *Superior Court, supra,* 77 Cal. App.3d 892. In that case a senior partner in a criminal defense firm was appointed the assistant district attorney, the third ranking position in the office. A criminal defendant who was represented by the assistant's former firm, and at one time had been represented by the assistant himself, moved to recuse the entire district attorney's office. The trial court granted the motion. The Court of Appeal found no abuse of discretion, noting that the assistant's participation in policy making and promotional evaluations could influence the prosecution of certain cases. The court concluded: "In any event the district attorney's office would always be 'on the spot' in the public's mind as regards its handling of any [such] cases. The problem is a 'Caesar's wife' problem. Not only must evil itself be avoided but any significant appearance thereof must likewise be avoided. The presence of a former leading criminal defense attorney, near the top of a public prosecutor's office, suggests to those of a paranoid and conspiratorial turn of mind the presence of a fox in the hen house. We do not think that such abnormal suspicion has any reasonable basis in fact whatsoever, but since a public prosecutor must 'perform his functions with the highest degree of integrity and impartiality, and with the appearance thereof' [citation omitted], for appearance's sake, the basis for this suspicion must be eliminated." (77 Cal.App.3d at p. 897.)

Finally, in *Chadwick* v. *Superior Court, supra,* 106 Cal.App.3d 108, a deputy public defender of Santa Barbara terminated his employment with the public defender's office and accepted a position as a deputy district attorney. The public defender then sought to disqualify the entire district attorney's office from prosecuting 39 pending felony cases in which the defendants had been represented by the former deputy. In two separate proceedings trial courts denied the motions. The Court of Appeal found no abuse of discretion. The court noted that the district attorney's office had taken pains to isolate the former deputy public defender from any involvement in those cases, that he had been assigned solely to juvenile court cases, and that he had sworn not to discuss those cases with prosecutorial personnel. (106 Cal.App.3d at p. 112.) Moreover, the former deputy public defender's office was in a building (the juvenile court building) separate from the district attorney's office. Other matters were noted by the court: The organizational chart of the

office had been modified so that the former deputy public defender would not be supervised by personnel involved in or connected with the trial of the moving defendants; the new deputy district attorney had no supervisorial or policy making role; and, the public defender had filed a declaration in which he praised the ethical and moral character of the former deputy stating that he had never known the deputy to act improperly and had no reason to believe that he would do so in his present capacity. (*Id.*, at p. 113.)

Had Miller originally been assigned to the misdemeanor section of the district attorney's offce, we would have no problem upholding the trial court's refusal to recuse. That was not the case, however. Within a very short time after concluding his employment with the public defender Miller was employed by the district attorney in a position with duties similar to those which he performed for the public defender. Moreover, he was assigned to the major crimes section, the very section with the responsibility of prosecuting petitioner. Thus after working for four months with the defense team and being privy to all defense confidences, work products and strategies, Miller suddenly went to work for the prosecution with the responsibility of assisting the very person assigned to prosecute petitioner in preparing cases for trial. The appearance of impropriety in such a situation is indeed serious. While we believe, as did the trial court, that no actual impropriety took place, the appearance of impropriety is manifest and must be minimized or eliminated. We conclude that a recusal order is necessary.

It does not follow that recusal of the entire district attorney's office is necessary. Both the parties and the trial court approached this issue on an all-or-nothing basis. Such an approach, however, does not commend itself in this case. The testimony at the hearing on motion for recusal indicated that there are 95 attorneys in the office. Of these only the five assigned to the major crimes section had a working relationship with Miller. There are many experienced deputies in the office, other than those five, who are capable of prosecuting felony cases and to whom the prosecution of petitioner could be assigned. Recusal only of the attorneys in the major crimes section while Miller was assigned there would cure most of the objections the People have to recusal and help avoid the appearance of impropriety. Thus the People's duly elected public prosecutor would still be responsible for the prosecution, the Attorney General would not be required to take on the responsibility for prosecu-

tion or to hire a private attorney, and yet the appearance that Miller had the opportunity to influence the prosecution would be diminished.[1]

We conclude that a writ of mandate should issue directing the trial court to enter an order recusing Miller and the five attorneys in the major crimes section of the office of the district attorney. If the prosecution is assigned to another deputy to whom the defense objects then a further order of recusal may be requested.

Let a peremptory writ of mandate issue directing the respondent superior court to grant petitioner's motion to recuse, but limiting such recusal order to David Miller and the five attorneys assigned to the major crimes section of the district attorney's office at the time Miller was assigned to that section.

Regan, Acting P. J., and Finney, J.,* concurred.

A petition for a rehearing was denied November 26, 1980.

---

[1]Perhaps a residue of appearance of impropriety will persist whenever a defense attorney becomes a prosecutor; such a tangential possibility cannot be permitted to interfere with the duties of the district attorney or the benefits to society derived from such changes in employment.

*Assigned by the Chairperson of the Judicial Council.