[No. C031323. Third Dist. Feb. 7, 2001.]

DAPHNE ADAMS et al., Plaintiffs and Appellants, v.
AEROJET-GENERAL CORPORATION, Defendant and Respondent.

COUNSEL

Hackard, Holt & Heller, Theodore J. Holt, Eric L. Graves, Jenny M. Fickel; Zelle & Larson, Byran M. Barber, Eric Berg; Sherman, Dan, Petoyan, Salkow & Weber, Sherman, Dan & Portugal, Arthur Sherman; Eisen & Johnston Law Corporation, Jay-Allen Eisen and Marian M. Johnston for Plaintiffs and Appellants.

Nossaman, Guthner, Knox & Elliott, Scott P. DeVries, Patrick J. Richard, Elaine M. O'Neil, Alison S. Hightower; Goldsberry, Freeman & Swanson, Francis M. Goldsberry II; Heller, Ehrman, White & McAuliffe, Lawrence A. Hobel; and Jose N. Uranga for Defendant and Respondent.

OPINION

**CALLAHAN, J.**—This case poses the following hypothetical question concerning the propriety of attorney disqualification in the context of successive representation: Lawyer's former law firm, "Firm A", advises "Client" on matters pertaining to land use and toxic waste disposal at its manufacturing site. Lawyer does not personally render any such advice and, in fact, spends no time rendering legal services to Client while at Firm A. Years later, having left Firm A and started a new law firm, "Firm B," Lawyer files suit on behalf of a number of plaintiffs against Client alleging that Client's use and disposal of toxic chemicals at the site caused groundwater contamination and that Client concealed it from the public. Client then brings a motion to disqualify Lawyer and Firm B from participating in the lawsuit, supported by a showing that Firm A's earlier representation of Client has a substantial relationship to the present action. Does Firm A's earlier representation of Client in matters pertaining to the current litigation automatically disqualify Lawyer and his current firm from representing plaintiffs?

No state appellate decision has yet answered this question. We will decide that the lawyer who leaves Firm A is not automatically disqualified in this situation. Instead, disqualification depends on a fact-based examination of the nature and extent of Lawyer's involvement with and exposure to Firm A's earlier representation of Client and specifically whether confidential information material to the current lawsuit would normally have been imparted to Lawyer while at Firm A. Because the trial court did not undertake such inquiry, but ordered disqualification based on a conclusive presumption of imputed knowledge, we will reverse and remand with directions.

## BACKGROUND

The essential facts are undisputed. In the mid-1980's, defendant Aerojet General Corporation (Aerojet) retained the Sacramento law firm of Holliman, Hackard & Taylor (Holliman Hackard) for advice on land use issues. Attorney Michael Hackard was a partner in Holliman Hackard during that time. Included among the subjects on which Holliman Hackard provided legal advice were (1) whether Aerojet's existing hazardous waste treatment, storage and disposal facilities were in compliance with local ordinances; (2) the installation of a contamination treatment facility to remove chemicals from groundwater serving the certain wells; (3) replacing a disposal practice whereby ammonium perchlorate was disposed of by way of open controlled burning from a waste incinerator; and (4) the closure of an on-site landfill on Aerojet's property, which involved drawing groundwater samples to determine whether any environmental contamination had resulted from the landfill use. During the course of this representation, Aerojet provided Holliman Hackard with confidential information regarding chemical contamination on Aerojet's property and surrounding areas, Aerojet's litigation strategy with respect to environmental contamination issues, and Aerojet's strategy for addressing the concerns of the public regarding contamination on the site.

Although Hackard was a principal at the firm, the billing records of Holliman Hackard reveal that he did not perform any work on Aerojet matters. Moreover, according to the declarations before the trial court, Hackard had no discussions with the attorneys at Holliman Hackard regarding Aerojet matters and was not made privy to any information, confidential or otherwise, about Aerojet. According to his declaration, Hackard departed the Holliman Hackard firm in 1989, without taking any files or written materials about Aerojet with him.

In March of 1998, numerous residents and occupants of the area surrounding Aerojet's disposal site filed the current suit against Aerojet and other defendants, alleging negligence, strict liability, trespass, nuisance, fraudulent concealment, unfair business practice, and intentional infliction of emotional distress. The plaintiffs were represented by three law firms, one of which was Hackard's new law firm of Hackard, Holt & Heller (Hackard Holt).

The first amended complaint in the underlying suit alleges that since 1951, defendants have released and improperly used and disposed of toxic chemicals, resulting in contamination of the groundwater and surrounding soils. It further alleges that defendants contaminated the soil with perchlorate and other toxic chemicals; that, moreover, defendants knew of the hazardous conditions they had created and nevertheless subjected plaintiffs to the

danger of exposure to these substances without warning them of the health dangers, thereby willfully and intentionally concealing knowledge of the contamination.

Within days after the suit was filed, attorneys for Aerojet wrote to Hackard and requested that he and his firm disqualify themselves as counsel for plaintiffs, because the substantial relationship between Holliman Hackard's former representation of Aerojet and the present suit placed Hackard in a position adverse to a former client. Hackard declined, asserting that he had no personal involvement in the representation of Aerojet or possession of confidential information relevant to the present lawsuit. Aerojet then brought this motion to disqualify Hackard Holt from this litigation.

The court ordered Hackard and the Hackard Holt firm disqualified from the case. Invoking the "imputed knowledge" rule, i.e., that knowledge acquired by one member of a firm of lawyers is imputed to all members of the firm (*Rosenfeld Construction Co. v. Superior Court* (1991) 235 Cal.App.3d 566, 573 [286 Cal.Rptr. 609]), the court ruled that the knowledge acquired by Hackard's former partners about Aerojet must be imputed to Hackard. The court also found there was a substantial relationship between the subject matter of Holliman Hackard firm's prior representation and the present suit. "Therefore, there is a conclusive presumption that confidential information passed to Michael Hackard, as a partner in [Holliman Hackard], and he and his present firm must be disqualified." Plaintiffs filed this appeal from the order.

APPEAL

I

*Principles of Review*

■ The standard of review for disqualification orders was spelled out recently in *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143-1144 [86 Cal.Rptr.2d 816, 980 P.2d 371] (*SpeeDee Oil*): "Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.]

Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion. [Citation.]"

## II

### *Rule 3-310 and the Substantial Relationship Test*

Disqualification in the present case turns upon application of rule 3-310(E) of the Rules of Professional Conduct of the State Bar of California (rule 3-310(E)), which provides, in pertinent part: "A member shall not, without the informed written consent of the . . . former client, accept employment adverse to the . . . former client where, by reason of the representation of the . . . former client, the member has obtained confidential information material to the employment."

■ "Where an attorney's conflict arises from successive representation of clients with potentially adverse interests, 'the chief fiduciary value jeopardized is that of client *confidentiality*.' [Citation.]" (*Forrest v. Baeza* (1997) 58 Cal.App.4th 65, 73 [67 Cal.Rptr.2d 857], quoting *Flatt·v. Superior Court* (1994) 9 Cal.4th 275, 283 [36 Cal.Rptr.2d 537, 885 P.2d 950], italics in *Flatt*.) Therefore, "a former client may seek to disqualify a former attorney from representing an adverse party by showing that the former attorney possesses confidential information adverse to the former client. [Citation.]" (*Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109, 113 [14 Cal.Rptr.2d 184].)

Disqualification of an attorney from undertaking representation adverse to a former client does not require proof that the attorney *actually* possesses confidential information. Rather, in applying rule 3-310(E) our courts have utilized the "substantial relationship" test: " 'When a substantial relationship has been shown to exist between the former representation and the current representation, and when it appears by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney or to subordinates for whose legal work he was responsible, the attorney's knowledge of confidential information is presumed. [Citation.]' " (*Rosenfeld Construction Co. v. Superior Court, supra,* 235 Cal.App.3d at p. 574, quoting *Global Van Lines, Inc. v. Superior Court* (1983) 144 Cal.App.3d 483, 489 [192 Cal.Rptr. 609] (*Global*).)

As explained in *Global,* "[t]his is the rule by necessity, for it is not within the power of the former client to prove what is in the mind of the attorney.

Nor should the attorney have to 'engage in a subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation.' [Citations.]" (*Global, supra,* 144 Cal.App.3d at p. 489.)

 The substantial relationship test was given refinement and specificity in *H. F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445 [280 Cal.Rptr. 614] (*Ahmanson*). *Ahmanson* first observed that "[u]nder the *Global Van Lines* formulation of the test, the courts focus less on the meaning of the words 'substantial' and 'relationship' and look instead at the practical consequences of the attorney's representation of the former client. The courts ask whether confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation. [Citation.]" (*Id.* at p. 1454.) Noting that the test "is 'intended to protect the confidences of former clients *when an attorney has been in a position to learn them*'" (*id.* at p. 1455, citing *Silver Chrysler Plymouth, Inc. v. Chrysler Mot. Corp.* (2d Cir. 1975) 518 F.2d 751, 757, italics added), the court in *Ahmanson* identified three factors the court should consider in applying the test: (1) factual similarities between the two representations, (2) similarities in legal issues, and (3) the nature and extent of the attorney's involvement with the case and whether he was in a position to learn of the client's policy or strategy. (*Ahmanson, supra,* 229 Cal.App.3d at p. 1455, citing *Silver Chrysler, supra,* at p. 760 (conc. opn. of Adams, J.).)

If Hackard himself had been personally involved with the Holliman Hackard firm's work on Aerojet matters during his tenure with the firm in the 1980's, this appeal would be easily resolved. Holliman Hackard's former representation of Aerojet clearly has a substantial relationship to the present lawsuit under the *Ahmanson* test: factual issues are similar if not identical (disposal of waste and chemical contamination in and around the Aerojet site); legal issues are related (toxic tort liability and the duty to warn the public); and Hackard's prior work on the case would have placed him in a position to be exposed to confidential information belonging to Aerojet. Viewing the evidence in the light most favorable to the trial court's ruling, we would be duty-bound to affirm the disqualification order. " 'If a substantial relationship is established, the discussion should ordinarily end. The rights and interests of the former client will prevail. Conflict would be presumed; disqualification will be ordered.' " (*Rosenfeld Construction Co. v. Superior Court, supra,* 235 Cal.App.3d at p. 575, quoting *River West, Inc. v. Nickel* (1987) 188 Cal.App.3d 1297, 1308-1309 [234 Cal.Rptr. 33].)

Here, however, there is no indication of Hackard's personal involvement in Aerojet matters, nor any direct evidence that he was exposed to client

secrets during the time his former firm rendered services to Aerojet. Did the Aerojet work performed by Hackard's colleagues in the former firm stain him irretrievably with the taint of conflict, requiring his automatic disqualification? The answer depends on how far we extend the doctrine of imputed knowledge.

### III

#### *Imputed Knowledge and Vicarious Disqualification*

It is now firmly established that where the attorney is disqualified from representation due to an ethical conflict, the disqualification extends to the entire firm (*Flatt v. Superior Court, supra,* 9 Cal.4th at p. 283; *Henriksen v. Great American Savings & Loan, supra,* 11 Cal.App.4th at p. 114) at least where an effective ethical screen has not been established (see *SpeeDee Oil, supra,* 20 Cal.4th at p. 1151). The rule of vicarious disqualification is based upon the doctrine of imputed knowledge: " 'The imputed knowledge theory holds that knowledge by any member of a law firm is knowledge by all of the attorneys in the firm, partners as well as associates.' " (*Rosenfeld Construction Co. v. Superior Court, supra,* 235 Cal.App.3d at p. 573, quoting *Chadwick v. Superior Court* (1980) 106 Cal.App.3d 108, 116 [164 Cal.Rptr. 864].) Courts have based this rule on the practical impossibility of a private law firm creating an "ethical wall" around an attorney who has been exposed to confidential information about the former client by screening him off from the firm's representation of the former client's adversary. (See *Henriksen, supra,* 11 Cal.App.4th at pp. 115-116.) ■ Therefore, once the attorney is shown to have had probable access to former client confidences, the court will impute such knowledge to the entire firm, prohibiting all members of the firm from participating in the case. (E.g., *Henriksen, supra,* at p. 117; *Dill v. Superior* Court (1984) 158 Cal.App.3d 301, 305-306 [205 Cal.Rptr. 671]; *Galbraith v. The State Bar* (1933) 218 Cal. 329, 332-333 [23 P.2d 291].)

This case does not present a standard application of the imputed knowledge doctrine, however, because here the court applied the concept in reverse: instead of imputation from attorney to the remainder of the firm, the court here ruled that, once a connection was shown between the *former firm*'s representation and the issues involved in the current lawsuit, the knowledge acquired by the former firm was "imputed" back to the attorney, mandating his automatic disqualification even after his departure from the firm, without inquiry as to whether the attorney was reasonably likely to have obtained confidential information.

To burden an attorney with such presumptive knowledge based solely on his former membership in a law firm which represented the former client, as

Aerojet urges, would require a significant extension of the doctrine of imputed knowledge beyond that recognized by any existing case law. For the reasons which follow, we conclude such an extension would be inconsistent with both the policy objectives behind rule 3-310(E) and the *Ahmanson* test. Further, it would ignore certain undeniable realities regarding today's practice of law.

## IV

### Applying Rule 3-310(E) to Successive Representation

Our starting point is the text of rule 3-310(E): "A *member* shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, *the member* has obtained confidential information material to the employment." (Italics added.) The rule implements the ethical imperative of Business and Professions Code section 6068, subdivision (e), which states that it is the obligation of every attorney "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client."

■ Rule 3-310(E) addresses the individual attorney, not the law firm. Its purpose is to ensure "permanent confidentiality of matters disclosed *to the attorney* in the course of the prior representation, . . ." (*Flatt v. Superior Court, supra,* 9 Cal.4th at p. 283, italics added.) "The primary concern is whether and to what extent *the attorney* acquired confidential information." (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1148, italics added.) We therefore agree with the conclusion of the State Bar Committee on Professional Responsibility that, "[a]s written, rule 3-310(E)) *refers to a 'member' and not to the member's law firm.* Rule 1-100(B)(2) defines the term 'member' as 'a member of the State Bar of California.'" (Cal. Compendium on Prof. Responsibility, State Bar Formal Opn. No. 1998-152, p. IIA-415, italics added (Formal Opinion No. 1998-152).) Both rule 3-310(E) and Business and Professions Code section 6068 thus presuppose that attorney-client confidences are acquired by *individual attorneys*, not by law firms in general.

The vicarious disqualification rule has been established as a prophylactic device to protect the sanctity of former client confidences where a law firm with a member attorney who has acquired knowledge of confidential information material to the current controversy would otherwise be permitted to represent the former client's adversary. "No amount of assurances or screening procedures, no 'cone of silence,' could ever convince the opposing party that the confidences would not be used to its disadvantage. . . . No one

could have confidence in the integrity of a legal process in which this is permitted to occur without the parties' consent." (*Cho v. Superior Court* (1995) 39 Cal.App.4th 113, 125 [45 Cal.Rptr.2d 863], fn. omitted.) As the State Bar Committee observes: "the absence of an effective means of oversight combined with the law firm's interest as an advocate for the current client in the adverse representation are factors that tend to undermine a former client's trust, and in turn the public's trust, in a legal system that would permit such a situation to exist without the former client's consent." (Formal Opn. No. 1998-152, *supra*, at p. IIA-418.)

Once an attorney departs the firm, however, a blanket rule to prevent future breaches of confidentiality is not necessary because the departed attorney no longer has presumptive access to the secrets possessed by the former firm. The court need no longer rely on the fiction of imputed knowledge to safeguard client confidentiality. Instead, the court may undertake a dispassionate assessment of whether and to what extent the attorney, during his tenure with the former firm, was reasonably likely to have obtained confidential information material to the current lawsuit.

Disqualification based solely on the presumptive taint of imputed knowledge from membership in the former law firm, without regard for the member-attorney's personal involvement in, or exposure to, the former client's representation, would produce some odd results. For example, under current case law, even prior direct contact between an attorney and the former client does not necessarily result in disqualification when the attorney subsequently represents an adverse party, as long as the contact was not substantially likely to have compromised client confidences. In *Ahmanson*, the court affirmed the denial of a motion for disqualification where the attorney for the former client provided legal services which were only peripherally related to the subject matter of the current litigation. (*Ahmanson, supra*, 229 Cal.App.3d at p. 1454.) And in *In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556 [20 Cal.Rptr.2d 132], the court upheld the denial of a disqualification motion brought by a wife against her ex-husband's dissolution lawyer, where the wife previously had a 20-minute phone consultation with the lawyer's former partner about the case. (*Id.* at pp. 560-561.) While conceding the "substantiality of the relationship between the former and current aspects of this litigation . . ." (*id.* at p. 563), the *Zimmerman* court held disqualification was not required where the relationship was "brief and insubstantial," and unlikely to result in the imparting of confidential information material to the current lawsuit. (*Id.* at p. 565.)

A rule of automatic disqualification such as that applied by the trial court would mean that an attorney who has had direct, personal contact with the

former client may switch sides in subsequent litigation without adverse consequence if the court finds that his prior involvement was "minimal," yet an attorney who had *no contact whatever* with the former client can be disqualified if the court finds his *former firm's* relationship with the same client was substantially related to the new litigation, regardless of whether the attorney personally acquired any material confidential information. We do not believe rule 3-310(E) was intended to produce such an anomaly.[1]

Disqualification based on a conclusive presumption of imputed knowledge derived from a lawyer's past association with a law firm is out of touch with the present day practice of law. Gone are the days when attorneys (like star athletes) typically stay with one organization throughout their entire careers. Partners with one law firm may join a competing firm or splinter off and form their own rival firm; former defense lawyers may become plaintiffs' specialists and vice versa; law firms (like marriages) dissolve, often acrimoniously, members striking off on their own and taking divergent paths. We have seen the dawn of the era of the "mega-firm." Large law firms (like banks) are becoming ever larger, opening branch offices nationwide or internationally, and merging with other large firms. Individual attorneys today can work for a law firm and not even know, let alone have contact with, members of the same firm working in a different department of the same firm across the hall or a different branch across the globe.

A rule under which a nonrebuttable presumption of imputed knowledge from an attorney's former firm follows him to whichever firm he subsequently joins would also pose insurmountable practical problems in screening for conflicts. When an attorney joins a new law firm, he normally discloses the names of former clients who will create a conflict for the new firm if it takes the opposing side in future litigation. But there is no way, when an attorney joins a new firm, that he or she can provide that new firm with notice of "imputed knowledge"—that is, names of clients and the nature of their matters the attorney never knew about or worked on while at the former firm. Application of the imputed knowledge doctrine under these circumstances would mean that the attorney's association with the new firm would automatically subject him and the new firm to disqualification without anyone knowing it.

---

[1] In *SpeeDee Oil, supra,* 20 Cal.4th 1135, the California Supreme Court held that an attorney who was "of counsel" to a law firm should be deemed to have the same status as a member of the firm for purposes of vicarious disqualification in applying rule 3-310. That case does not assist our inquiry here, for two reasons. First, *SpeeDee Oil* was a case of simultaneous, not successive, representation. Second, the plaintiff made a convincing evidentiary showing that the attorney whose firm was sought to be disqualified had *actually* obtained material information pertaining to the suit. (20 Cal.4th at p. 1139.) Hackard's disqualification in this case was based not on evidence, but on a conclusive presumption.

Any construction of rule 3-310(E) which would create an ethical conflict based on that which is unknown to both the attorney and his new firm would not only impair the attorney's freedom to change firms but would have far-ranging disruptive repercussions on the client as well. Consider, for example, the impact of such a rule on a client who selects a law firm to handle major litigation, only to learn well into the progress of the suit that the hiring of a new attorney has resulted in the firm's summary disqualification because of a matter the new hiree's former firm handled of which he personally was not even aware.

We conclude that a rule which disqualifies an attorney based on imputed knowledge derived solely from his membership in the former firm and without inquiry into his actual exposure to the former client's secrets sweeps with too broad a brush, is inconsistent with the language and core purpose of rule 3-310(E), and unnecessarily restricts both the client's right to chosen counsel and the attorney's freedom of association. It also clashes with the principle that applying the remedy of disqualification " 'when there is no realistic chance that confidences were disclosed [to counsel] would go far beyond the purpose' of the substantial relationship test." (*H. F. Ahmanson & Co. v. Salomon Brothers, Inc., supra*, 229 Cal.App.3d at p. 1455.)

V

*The Appropriate Test*

In crafting a standard applicable to a situation such as that posed here, we find helpful guidance in the American Bar Association Model Rules of Professional Conduct (ABA Model Rules). (See *Cho v. Superior Court, supra*, 39 Cal.App.4th at p. 121, fn. 2.) ABA Model rule 1.9 prohibits an attorney whose firm represented a client on the same or substantially related matter from subsequently taking a position adverse to that client, but only *if* the lawyer had acquired confidential information "material to the matter." (ABA Model Rules, rule 1.9(b).) The comment to rule 1.9 explains that while "the client previously represented by the former firm must be reasonably assured that the principle of loyalty to the client is not compromised[,] . . . the Rule should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel." Furthermore, "the Rule should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association. In this connection, it should be recognized that today many lawyers . . . move from one association to another several times in their careers. If the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another

and of the opportunity of clients to change counsel." (ABA Model Rules Prof. Conduct, rule 1.9, com. [3].)

ABA Model Rules, rule 1.9 resolves these competing considerations by making disqualification turn on a fact-based inquiry into the access the lawyer had to confidential client information while at the former firm. (*Id.*, com. [6].) This approach was utilized in *Dieter v. Regents of University of Cal.* (E.D.Cal. 1997) 963 F.Supp. 908, a case which applies rule 3-310(E) and which shares many similarities with the present one.

In *Dieter*, the University of California Regents filed patent infringement claims against Dieter, USPCI and others. Three partners from the law firm representing the Regents (the Arnold firm) had formerly practiced with Townsend and Townsend, a large patent firm. During that time the Townsend firm served as intellectual property counsel to USPCI and was given "full access to . . . USPCI's personnel, business, and scientific records." However, the declarations before the court showed that only attorneys operating from a different branch office at Townsend worked on the USPCI account; the three partners in question did not work on USPCI-related matters. (*Dieter v. Regents of University of Cal.*, *supra*, 963 F.Supp. at pp. 909-910.)

District Court Judge Levi, applying California law, denied the defendants' motion to disqualify the three Arnold attorneys and the Arnold firm from representing the Regents based on an asserted conflict under rule 3-310(E).

The court first observed that the substantial relationship test was straight-forward when the attorney was directly involved in the first representation, since it was simply a matter of comparing the attorney's work on the first matter with the subject of the second representation. (*Dieter v. Regents of University of Cal.*, *supra*, 963 F.Supp. at pp. 910-911.) "But it is much less clear under the California rules and case law whether an attorney who was not personally involved in the prior representation would be barred from the subsequent representation if the attorney has left the firm that handled the prior representation and joined a new firm. The consequences of barring the attorney in this situation are substantial since the attorney's new firm would also be barred by imputation." (*Id.* at p. 911, italics omitted.)

The court looked to ABA Model Rules, rule 1.9 for the answer. Because "preserving confidentiality" is the touchstone of the disqualification rule, the result mandated by rule 1.9 is that " 'if a lawyer while with one firm acquired no knowledge or information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individu-ally nor the second firm is disqualified from representing another client in

the same or a related matter even though the interests of the two clients conflict.' " (*Dieter v. Regents of University of Cal., supra,* 963 F.Supp. at p. 911, quoting ABA Model Rules, rule 1.9.)

As noted in *Dieter,* the Restatement Third of the Law Governing Lawyers takes a similar approach: " 'When a lawyer leaves a firm . . . whose lawyers were subject to imputed prohibition owing to presence in the firm of another lawyer, the *departed lawyer becomes free of imputation so long as that lawyer obtained no material confidential information relevant to the matter.* Similarly, lawyers in the new affiliation are free of imputed prohibition if they can carry the burden of persuading the finder of fact that the arriving lawyer did not obtain confidential client information about a questioned representation by another lawyer in the former affiliation. (*Restatement (Third) of the Law Governing Lawyers*[,] § 204[,] [com.] c(ii) (Proposed Final Draft No. 1, 1996).)' " (*Dieter v. Regents of University of Cal., supra,* 963 F.Supp. at p. 911.)

The *Dieter* court found these two sets of rules to be consonant with the *Ahmanson* test as applied in California, wherein the court makes a particularized inquiry into the nature and extent of the attorney's personal involvement in the prior matter and determines "whether 'confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation.' " (*Dieter v. Regents of University of Cal., supra,* 963 F.Supp. at p. 911, quoting *H. F. Ahmanson & Co. v. Salomon Brothers, Inc., supra,* 229 Cal.App.3d at p. 1454.) It refused to impute knowledge of client confidences to the attorneys merely because they were members of the same firm which had represented USPCI. Since the evidence showed that the attorneys had no contact whatsoever with USPCI matters while at the Townsend firm, the court denied the motion to disqualify them. (*Dieter, supra,* at pp. 911-912; accord, *San Gabriel Basin Water v. Aerojet-General Corp.* (C.D.Cal. 2000) 105 F.Supp.2d 1095, 1104-1105.)

Our courts have recognized that disqualification usually imposes a substantial hardship on the attorney's innocent client, who has been deprived of chosen counsel and must bear the monetary expense and other burdens associated with finding a replacement. (*Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 581 [70 Cal.Rptr.2d 507], citing *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 300 [254 Cal.Rptr. 853].) "Additionally, as courts are increasingly aware, motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent. [Citation.] Such motions can be misused to harass opposing counsel [citation], to delay the litigation [citation], or to intimidate

an adversary into accepting settlement on terms that would not otherwise be acceptable. [Citations.] In short, it is widely understood by judges that 'attorneys now commonly use disqualification motions for purely strategic purposes . . . .' [Citations.]" (*Gregori, supra*, at pp. 300-301, fns. omitted.) On the other hand, rule 3-310(E) must be vigorously applied to protect a former client's legitimate expectations of loyalty and trust.

■ We conclude that disqualification should not be ordered where there is no reasonable probability the firm-switching attorney had access to confidential information while at his or her former firm that is related to the current representation. We therefore hold that where there is a substantial relationship between the current case and the matters handled by the firm-switching attorney's former firm, but the attorney did not personally represent the former client who now seeks to remove him from the case, the trial court should apply a modified version of the "substantial relationship" test as described in *Ahmanson*. The court's task, under these circumstances, is to determine whether confidential information material to the current representation would normally have been imparted to the attorney during his tenure at the old firm. In answering this question, the court should focus on the relationship, if any, between the attorney and the former client's representation. It should consider any time spent by the attorney working on behalf of the former client and "the attorney's possible exposure to formulation of policy or strategy" in matters relating to the current dispute. (*H. F. Ahmanson & Co. v. Salomon Grothers, Inc., supra*, 229 Cal.App.3d at p. 1455.) The court should also take into account whether the attorney worked out of the same branch office that handled the former litigation, and/or whether his administrative or management duties may have placed him in a position where he would have been exposed to matters relevant to the current dispute.

The trial court's discretion is broad. It may not only consider the declarations and other evidence before it, but may apply "inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together." (ABA Model Rules, rule 1.9, com. [6].)[2]

Finally, in light of the paramount importance of maintaining the inviolability of client confidences, where a substantial relationship between the former firm's representation of the client and the current lawsuit has been shown (as is the case here), the attorney whose disqualification is sought

---

[2]As with any other evidentiary inquiry, resolution of this issue is a question of fact unless reasonable minds could come to only one conclusion, in which case it becomes a question of law. (*Pan Asia Venture Capital Corp. v. Hearst Corp.* (1999) 74 Cal.App.4th 424, 433 [88 Cal.Rptr.2d 118].)

should carry the burden of proving that he had no exposure to confidential information relevant to the current action while he was a member of the former firm. (See ABA Model Rules, rule 1.9, com. [7].) That burden requires an affirmative showing and is not satisfied by a cursory denial.

## VI

### *Application to the Trial Court's Ruling*

■ The trial court, while finding the reasoning in *Dieter* "persuasive," believed disqualification was mandatory because a substantial relationship existed between the work done by Hackard's *former firm* and his representation of plaintiffs in this suit. In other words, disqualification was based not on a particularized analysis of Hackard's relationship to Aerojet matters while at Holliman Hackard, but on a conclusive presumption derived from Hackard's mere *membership* in the former firm. "A trial court abuses its discretion when it applies the wrong legal standards applicable to the issue at hand. [Citations.]" (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 85 [87 Cal.Rptr.2d 754].) Since the trial court employed the wrong test, an abuse of discretion has been shown. (*Zador Corp. v. Kwan* (1995) 31 Cal.App.4th 1285, 1303 [37 Cal.Rptr.2d 754].)

We shall remand to the trial court with directions to reconsider the motion by applying the proper standard. (*Rosenfeld Construction Co. v. Superior Court, supra,* 235 Cal.App.3d at p. 578.) On remand, the court should focus not only on the relationship between Hackard and the Holliman Hackard firm's representation of Aerojet, but whether Hackard's responsibilities as partner and principal, as well as his relationship with other members of the Holliman Hackard firm, placed him in a position where he was reasonably likely to have obtained confidential information relating to the current case. Prior to ruling on the disqualification motion the court, in its discretion, and with an eye toward avoiding satellite litigation and unwarranted annoyance, embarrassment, burden, or expense (Code Civ. Proc., § 2023, subd. (a)(3)), may allow further limited discovery reasonably calculated to produce admissible evidence with respect to these issues.

### DISPOSITION

The order of disqualification is reversed. The cause is remanded to the trial court to reconsider Aerojet's motion in a manner consistent with this opinion. Plaintiffs shall recover costs on appeal.

Kolkey, J., concurred.

**SCOTLAND, P. J.,** Concurring and Dissenting.—I agree with much of the majority's analysis, but disagree with the result.

In the context of an attorney-client relationship, the doctrine of imputed knowledge is a product of public policy and pragmatism. As a matter of public policy, it is presumed that an attorney has knowledge of confidential information adverse to the opposing party in a lawsuit when the former representation of that party by the attorney or the attorney's firm had a substantial relationship to the matters at issue in the current lawsuit and when the nature of the former relationship between the attorney or the attorney's firm and the party was such that confidential information material to the current dispute normally would have been imparted to the attorney. (*H. F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1452, 1453, 1454 [280 Cal.Rptr. 614].)

A former client's legitimate expectations of loyalty, trust, and security in the attorney-client relationship, and the need for public confidence in the scrupulous administration of justice and the integrity of the bar, require such a presumption. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145, 1147 [86 Cal.Rptr.2d 816, 980 P.2d 371]; *H. F. Ahmanson & Co. v. Salomon Brothers, Inc., supra,* 229 Cal.App.3d at p. 1453.)

This also is a "rule of necessity" in that it ordinarily is not within the power of the opposing party to prove what is in the mind of the attorney who formerly was affiliated with the law firm that represented the opposing party on matters substantially related to the current lawsuit. (*H. F. Ahmanson & Co. v. Salomon Brothers, Inc., supra,* 229 Cal.App.3d at p. 1453.)

As emphasized by the majority in this case, disqualification of an attorney from undertaking representation adverse to a client of the attorney's former law firm does not require proof that the attorney *actually* possesses confidential information about that client which is material to the current dispute. It merely must appear from the nature of the relationship between the attorney's former law firm and the client that confidential information material to the current dispute against the client " 'would normally have been imparted to the attorney . . . .' " (*H. F. Ahmanson & Co. v. Salomon Brothers, Inc., supra,* 229 Cal.App.3d at p. 1454, citation omitted.)

The fact this rule is overinclusive, may impose significant hardship on the attorney's current client, and may unfairly limit the attorney's employment opportunities (*H. F. Ahmanson & Co. v. Salomon Brothers, Inc., supra,* 229 Cal.App.3d at p. 1453) is immaterial because the importance of the public

policy at stake is paramount. (See *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at pp. 1145-1147.)

As the majority properly points out, this rule does not mean an attorney always is disqualified from representing a new client in an action brought against a party that had been represented by a law firm to which the attorney previously was a member. If the attorney can establish, to the trial court's satisfaction, that information about the opposing party substantially related to the matter at issue in the new lawsuit would *not* normally have been imparted to the attorney while he or she was a member of the law firm that had represented the opposing party, there is no basis to impute that information to the attorney and, thus, no basis to disqualify the attorney.

That an attorney should be able to rebut the presumption of knowledge imputed as a result of the attorney's former affiliation with a law firm that represented the opposing party is important for the reasons stated by the majority. However, we must recognize that allowing the attorney to do so—rather than applying a conclusive presumption of knowledge—creates practical problems.

Depending on the circumstances, discovery may be necessary in order to present the trial court with facts essential to determine whether the attorney was in a position with the former law firm such that confidential information about the former law firm's client that is material to the current dispute against that client normally would have been imparted to the attorney. This means that, assuming the former law firm still exists, the parties may have to engage in problematic and expensive discovery regarding the inner workings of the firm (e.g., how it assigned and handled the case; how litigation strategy was formed and discussed among partners and associates; whether members of the firm chat about cases in the hallway where their discussions could be overheard by others in the firm who are not directly involved in the litigation; whether billing records show the attorney charged any time to the client, etc.). In addition, such discovery would draw into this controversy a law firm that otherwise is not involved in the litigation, causing it to expend time and suffer the burden of responding to litigation in which it has no interest and will gain no benefit.

For this reason, I conclude that the attorney seeking to avoid disqualification should have a formidable burden to present a compelling prima facie showing that either (1) the prior representation of the opposing party by the attorney's former law firm did not have a substantial relationship to the matters at issue in the current lawsuit, or (2) the nature of the former relationship between the law firm and the opposing party was such that

confidential information material to the current dispute normally would not have been imparted to the attorney.

I also conclude that the attorney cannot make such a prima facie showing merely by declaring that he or she does not recall having any discussions regarding confidential information about the opposing party while affiliated with the former law firm or that the attorney has never received such information. Allowing such a conclusory declaration to rebut the presumption of imputed knowledge would run counter to the commonsense notion that the opposing party seldom will be in a position to counter the attorney's claim of ignorance, and would run afoul of the purpose of the presumption, i.e., the need to fulfill a former client's legitimate expectations of loyalty, trust, and security in the attorney-client relationship, and to promote public confidence in the scrupulous administration of justice and the integrity of the bar. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at pp. 1145, 1147; *H. F. Ahmanson & Co. v. Salomon Brothers, Inc., supra,* 229 Cal.App.3d at p. 1453.)

Moreover, because of its problematic nature, I conclude that discovery should be permitted only after the attorney makes the aforesaid prima facie showing.

In this case, plaintiff's attorney, Michael Hackard, did not dispute that there was a substantial relationship between the matters at issue in this lawsuit against defendant Aerojet-General Corporation (Aerojet) and the matters upon which legal work was done for Aerojet by Hackard's former law firm. Hence, the trial court applied a conclusive presumption of imputed knowledge and ruled that Hackard's disqualification as counsel for plaintiff was required as a matter of law. The majority correctly finds that the trial court erred in applying a conclusive presumption of imputed knowledge.

Nevertheless, unlike the majority, I conclude that remand is inappropriate because, as I shall explain, Hackard failed to make a prima facie showing that the nature of the relationship between Hackard's former law firm and Aerojet was such that confidential information material to the current dispute normally would not have been imparted to Hackard.

Contrary to the large, multi-office firm at question in *Dieter v. Regents of University of Cal.* (E.D.Cal. 1997) 963 F.Supp. 908, cited by the majority, Hackard's former law firm was a small office of seven to ten attorneys, of which Hackard was a name partner and Aerojet was a major client. It is inconceivable that, in such a small firm with only three partners, there would not have been discussions among all the attorneys, particularly the partners,

about material matters relating to the representation of a major, sustaining client like Aerojet. It takes no imagination to recognize that confidential information which would be useful to someone later suing Aerojet normally would be imparted during discussions about billing matters or billing rates, during casual conversations at social occasions with Aerojet principals, or in the many other types of contacts among attorneys in the firm that would not constitute direct representation and would not show up on billing records. The client was too big, the firm too small, and the matters at issue too closely related to say there is no conflict. (See *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra,* 20 Cal.4th at pp. 1153-1154 [It is an "everyday reality" that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information"; in fact, it is this "close, personal, continuous, and regular relationship between a law firm and the attorneys affiliated with it" and "its attendant exchanges of information, advice, and opinions" that justify "the conflict imputation rule"].)

In light of the important public policy at stake in this dispute, Hackard's declaration that he did not recall having "any" discussions with attorneys at his former law firm regarding Aerojet and that, while a shareholder of his former law firm, he never performed any work on Aerojet files, never met with Aerojet representatives, and "never received any information" about Aerojet's practices and procedures was too conclusory to rebut the presumption of imputed knowledge derived from the commonsense conclusion that, in light of the size of Hackard's former law firm and his status as one of three named partners, confidential information about its major client, Aerojet, material to the current dispute normally would have been imparted to Hackard. Likewise, declarations of his partners in the former law firm stating that they "do not recall" discussing with Hackard any matters relating to Aerojet are insufficient to rebut the presumption of imputed knowledge.

Consequently, I would affirm the order of disqualification.

Respondent's petition for review by the Supreme Court was denied May 16, 2001. Kennard, J., was of the opinion that the petition should be granted.