[No. F049231. Fifth Dist. Jan. 12, 2007.]

PEDRO GARCIA OCHOA et al., Plaintiffs and Respondents, v. FORDEL, INC., et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Discussion parts I., II., IV.C. and VIII.

**COUNSEL**

Caswell Bell & Hillison and Russell G. VanRozeboom for Defendants and Appellants.

W. J. Smith & Associates and William J. Smith for Plaintiffs and Respondents.

OPINION

**VARTABEDIAN, Acting P. J.**—Plaintiffs brought an employment discrimination and wrongful termination lawsuit against three corporations and one individual. Defendants moved to disqualify the law firm representing plaintiffs because that firm hired an attorney who previously worked at the law firm that represented defendants. Applying the modified substantial relationship test, the superior court found that the targeted attorney had carried his burden of proving that confidential information material to plaintiffs' lawsuit was not imparted to him. Accordingly, the superior court denied the motion.

Two defendants appeal, claiming (1) the superior court's findings of fact were not supported by substantial evidence, (2) the superior court failed to consider and analyze material facts, (3) the superior court committed legal error in analyzing the firm-switching attorney's *opportunity* for acquiring confidential information while at his former law firm, and (4) the superior court erroneously denied their request to depose the firm-switching attorney.

We conclude (1) the superior court's findings are supported by substantial evidence, (2) the superior court correctly ruled that the modified substantial relationship test, when met, shifts the burden to the targeted attorney to prove that he or she was not exposed to material confidential information (not to prove that he or she had no opportunity to acquire confidential information), and (3) the superior court did not otherwise abuse its discretion. Therefore, the order denying the motion to disqualify is affirmed.

## FACTS AND PROCEEDINGS

The second amended complaint of plaintiffs Pedro Garcia Ochoa and Agustin Ochoa alleges that they were employed by defendants Ridgeback Ranch, Inc. (Ridgeback), Fordel, Inc. (Fordel), and/or Peak Harvesting, Inc. (Peak Harvesting), from the late 1980's until their employment was terminated in May 2003. The second amended complaint alleges (1) age discrimination, (2) disability discrimination, (3) wrongful termination in violation of public policy, (4) violations of provisions of the Labor Code, and (5) violations of Business and Professions Code section 17200.

Plaintiffs alleged that Ridgeback, Fordel, and Peak Harvesting are California corporations that do business in Fresno County. Plaintiffs alleged that defendant Randall S. Johnston was an employee as well as a shareholder, owner, and/or managing agent of the three corporate defendants. They further alleged that Johnston was their direct supervisor.

Ridgeback and Johnston filed a motion to disqualify attorney Shelley G. Bryant and the law firm of W. J. Smith & Associates (Smith) from representing plaintiffs in this case on June 30, 2005. Declarations in support of the motion set forth the following facts.

Ridgeback and Johnston retained the law firm of Jory, Peterson, Watkins, Ross & Woolman (Jory Peterson) to defend them in this case soon after they were served with the complaint in January 2004. Bryant was an associate of the Jory Peterson firm at that time. From January 1 through May 11, 2005, Bryant was a shareholder in that firm.

In April 2005, Bryant informed Jory Peterson that he would resign his employment and shareholder status effective May 11, 2005, and would become associated with Smith. Bryant subsequently told John Peterson of that firm he would begin work at Smith immediately after his departure from Jory Peterson.

On May 10 and May 25, 2005, John Peterson sent letters to Smith requesting it withdraw from representing plaintiffs in light of Bryant's new association with Smith. Smith refused to withdraw. Subsequently, Ridgeback and Johnston informed John Peterson that they would not waive the conflict and wished to file a motion to disqualify the Smith firm.

John Peterson is the attorney at Jory Peterson who is primarily responsible for representing Ridgeback and Johnston in this case. He is assisted by Jason Parkin. Jory Peterson's billing records do not contain any entries showing Bryant worked on this case.

Jason Parkin's office was adjacent to Bryant's office most of the time that Bryant was at Jory Peterson. Parkin would regularly discuss issues and strategies with Bryant. He remembered "two occasions when [he] had discussions with Mr. Bryant regarding issues and strategies relating to the present litigation." Also, Bryant had access to all computerized records maintained by the firm.

Parkin performed an audit of Jory Peterson's software system used to manage documents created on the firm's network. The audit showed that Bryant gained computer access to six documents created in connection with this litigation. The documents were (1) a declaration in support of a motion to compel, (2) a memorandum of points and authorities in support of a motion to compel, (3) a draft proposed order regarding a motion to compel, (4) a

notice of motion and motion to strike the complaint, (5) a request for production of documents, and (6) correspondence from Jory Peterson to the California Department of Fair Employment and Housing (DFEH) regarding complaints filed by plaintiffs with the DFEH. The audit also showed the dates that Bryant accessed the documents. For example, he viewed the correspondence to the DFEH on November 17, 2003.

Parkin also described Monday luncheon meetings attended by attorneys and paralegals at Jory Peterson. At these meetings, various topics were discussed, including new litigation matters in which the firm had been retained as well as issues and strategies in pending cases. Parkin routinely attended the meetings and stated that "[d]uring his employment at Jory, Peterson, Mr. Bryant attended nearly all of these luncheon meetings." Jason Parkin also asserted: "I recall discussing various issues and strategies regarding the present matter at one or more of the luncheon meetings. I have no specific recollection as to whether Mr. Bryant was present at the particular meetings during which issues regarding the present matter were discussed, but I believe that he was present."

Fordel and Peak Harvesting filed a notice of joinder in the motion to disqualify on August 4, 2005. The joinder in the motion was supported by a declaration of their attorney, Russell VanRozeboom. The declaration asserted that on June 22, 2005, the law firm of Caswell Bell & Hillison LLP began to represent Fordel and Peak Harvesting in connection with the claims made by plaintiff Pedro Garcia Ochoa and that prior to June 22, 2005, the entities were represented by Jory Peterson. Based on his review of the files maintained by Jory Peterson, Russell VanRozeboom stated that "Jory, Peterson's representation of [Fordel and Peak Harvesting] dates back to claims filed by Pedro Garcia Ochoa with the Labor Commissioner in or about June 10, 2003."

Consequently, it appears that Fordel and Peak Harvesting were represented by Jory Peterson while Bryant worked at that firm and remained clients until about six weeks *after* Bryant switched firms.

On August 12, 2005, plaintiffs filed their opposition to the motion to disqualify along with supporting declarations from William J. Smith and Bryant. Bryant's declaration asserts the following facts. While employed at Jory Peterson, Bryant did not represent any of the four defendants in this matter and did no work on the Pedro Garcia Ochoa case or the Agustin

Ochoa case. He did not look at any part of the files for these cases that were maintained in Jory Peterson's file room. Since beginning work at Smith, Bryant has done no work on plaintiffs' cases, except for preparing his declaration.

With respect to the six documents that the audit of the computer software showed Bryant viewed while working at Jory Peterson, Bryant asserts that the documents did not contain confidential information. In particular, he viewed (1) three of the documents after they had been filed with the court, (2) the request for production of documents after it had been served on plaintiffs, and (3) the correspondence with the DFEH three months after it had been sent to the DFEH. Also, he asserts that, as a custom and practice, Jory Peterson never included confidential client information or confidential strategy in proposed orders, documents filed with the court, documents served on opposing parties, or correspondence sent to the DFEH.[1]

Bryant's declaration contradicts the statements in Parkin's declaration regarding discussions about plaintiffs' cases. Bryant stated that he never discussed the facts of plaintiffs' cases or any legal strategy of those cases with anyone. Attorney Bryant described his discussions with Parkin as follows: "On one occasion, Mr. Parkin and I discussed whether a Court has authority to issue an Order granting a plaintiff permission to file a new complaint following a successful attack on the pleadings, which raised a statute of limitations defense. We did not discuss the facts of [plaintiffs'] cases or anything other than this generic legal question. I told Mr. Parkin that I did not know whether the Court had such authority. I also told him that he should research the issue before making a big deal of it to avoid wasting time. I do not know whether he researched the issue or made any arguments in court regarding this point."

Paragraph 16 of Bryant's declaration addressed the Monday lunch meetings at Jory Peterson: "I have never discussed the facts or legal strategies or issues of [plaintiffs'] cases with anyone. I did not discuss [plaintiffs'] cases with anyone during any Monday lunch meeting at Jory Peterson as mentioned in the Declarations of Messrs. Peterson and Parkin. Further, I do not recall anyone else discussing [plaintiffs'] cases during any of the Monday lunch meetings that I attended at Jory Peterson. Therefore, as I did not attend every

---

[1] To emphasize the lack of secret or confidential information in these documents, the declaration of William J. Smith attached copies of five of the six documents referenced in Jason Parkin's declaration. The only document not included was the draft proposed order concerning the motion to compel.

Monday lunch meeting at Jory Peterson, I must conclude that I was not present at the meeting(s) where Mr. Peterson and Mr. Parkin claim that they might have discussed [plaintiffs'] cases."

The declarations of William J. Smith and Bryant addressed how the Smith firm kept Bryant insulated from plaintiffs' cases since he was hired by the firm.

On September 1, 2005, the motion to disqualify was argued before the superior court. Parkin appeared on behalf of moving parties Ridgeback and Johnston. Russell VanRozeboom appeared on behalf of Fordel and Peak Harvesting. William J. Smith appeared on behalf of plaintiffs.

Towards the end of the hearing, the superior court expressed a concern about the relationship between *access* to confidential information and *acquiring* confidential information because Bryant had access to confidential information but did not acquire any.

Also during the hearing, the attorney for Fordel and Peak Harvesting requested that he be allowed to take the deposition of Bryant in the event the motion to disqualify was denied and stated, "we want that opportunity to cross-examine [Bryant] about [his] declaration and to make a record of that for the Court to review before it makes a final decision."

In an 11-page written order filed September 13, 2005, the superior court discussed in detail the declarations submitted by the parties, applied the modified substantial relationship test, and concluded the test was not satisfied. Thus, the superior court refused to disqualify Bryant or Smith and denied the motion. The request to depose Bryant also was denied.

On November 14, 2005, Fordel and Peak Harvesting filed a notice of appeal relating to the order denying the motion to disqualify opposing counsel.

On February 27, 2006, we received a letter from Smith advising that Ridgeback had filed a chapter 11 bankruptcy petition and requesting a stay of all proceedings. Attached to the letter was a notice from the United States Bankruptcy Court for the Eastern District of California relating to Ridgeback Ranch, Inc., case No. 06-10116-B-11. On March 15, 2006, we filed an order

that denied without prejudice the request to stay this appeal and stated, "Respondents have failed to show how non-party defendant Ridgeback Ranch's bankruptcy action affects this appeal . . . ."

## DISCUSSION

I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. Standard of Review for Motions to Disqualify Counsel

A superior court's decision on a motion to disqualify counsel is reviewed for an abuse of discretion. (*Rosenfeld Construction Co. v. Superior Court* (1991) 235 Cal.App.3d 566, 572 [286 Cal.Rptr. 609] (*Rosenfeld*).) "If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion. [Citation.]" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143–1144 [86 Cal.Rptr.2d 816, 980 P.2d 371] (*SpeeDee Oil*).)

As we recognized in *Rosenfeld*, "[t]he resolution of factual issues arising from competing declarations is conclusive on the reviewing court, and conflicts in the declarations are resolved in favor of the prevailing party. [Citations]." (*Rosenfeld, supra,* 235 Cal.App.3d at pp. 572–573.) In contrast, where the declarations submitted reveal no disputed material facts, an appellate court need not defer to the inferences drawn by the trial court in resolving factual disputes for which the parties did not submit direct evidence. (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1144; *Collins v. State of California* (2004) 121 Cal.App.4th 1112, 1123 [18 Cal.Rptr.3d 112].) In such a situation, the appellate court is concerned with the legal significance of the undisputed facts in the record and reviews the trial court's decision as a question of law. (*SpeeDee Oil, supra,* at p. 1144.)

---

*See footnote, *ante,* page 898.

## IV. *Disqualifying Counsel to Protect Confidential Information*

### A. *Restriction on Representing Adverse Interests*

State Bar Rules of Professional Conduct, rule 3-310(E)[3] provides that an attorney may not, "without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

### B. *Modified Substantial Relationship Test*

■ Courts must apply rule 3-310(E) to a wide variety of situations. As a result, a number of situation-specific rules have been created by the judiciary. We need not discuss the judicially created rules in detail because the superior court and the parties agree that the situation presented in this case is governed by the modified version of the substantial relationship test. (See *Adams v. Aerojet-General Corp.* (2001) 86 Cal.App.4th 1324, 1340 [104 Cal.Rptr.2d 116] (*Adams*) [first published decision to refer to the "modified version of the 'substantial relationship' test"]; Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2005) ¶ 4:207.7, p. 4-61 [discussing the "modified" version of the substantial relationship test].)

Furthermore, we independently conclude that the modified substantial relationship test applies because this case involves (1) no proof that the firm-switching attorney actually obtained confidential information during the course of the prior attorney-client relationship;[4] (2) the successive representation of clients with adverse interests; and (3) a firm-switching attorney whose prior attorney-client relationship with the moving party was peripheral or

---

[3] All further references to rules shall be to the Rules of Professional Conduct of the State Bar of California unless otherwise indicated.

[4] The first important distinction in disqualification cases is whether the moving party/former client has proven that an attorney actually possesses confidential information or, alternatively, is relying on a presumption that the targeted attorney obtained confidential information (i.e., imputed knowledge). (Compare *Pound v. DeMera DeMera Cameron* (2005) 135 Cal.App.4th 70 [36 Cal.Rptr.3d 922] [confidential information actually known by lawyer associated into case; Ct. App., Fifth Dist. required disqualification of both lawyer and law firm] with *Farris v. Fireman's Fund Ins. Co.* (2004) 119 Cal.App.4th 671 [14 Cal.Rptr.3d 618] [Ct. App., Fifth Dist. ruled attorney and law firm must be disqualified because, under substantial relationship test, attorney was presumed to have obtained confidential information].)

"A former client may seek to disqualify a former attorney from representing an adverse party by showing the former attorney actually possesses confidential information adverse to the former client." (*H.F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1452 [280 Cal.Rptr. 614].)

attenuated. (*Adams, supra*, 86 Cal.App.4th at p. 1340; *Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 710 [3 Cal.Rptr.3d 877] (*Jessen*); see Vapnek et al., Cal. Practice Guide: Professional Responsibility, *supra*, ¶¶ 4:207:5–4:207.7, pp. 4-61 to 4-62 [disqualification of firm-switching attorneys].)

■ Under the modified substantial relationship test, a presumption that the attorney knows confidential information applies only where the moving party (the client of the attorney's former law firm) makes "an adequate showing that the attorney was in a position vis-a-vis the client to likely have acquired confidential information material to the current representation." (*Jessen, supra*, 111 Cal.App.4th at p. 710.) In *Adams*, the court described the inquiry as "whether the attorney was reasonably likely to have obtained confidential information." (*Adams, supra*, 86 Cal.App.4th at p. 1333.)[5]

The superior court relied on *Adams* for the proposition that three factors are considered in applying the test: "(1) factual similarities between the two representations, (2) similarities in legal issues, and (3) the nature and extent of the attorney's involvement with the case and whether he was in a position to learn of the client's policy or strategy." (*Adams, supra*, 86 Cal.App.4th at p. 1332.)

The superior court determined that the first two factors were met because the same litigation was pending between the parties during Bryant's association with Jory Peterson and Smith. Based on this determination, the superior court considered the question "whether confidential information material to the current representation would normally have been imparted to Bryant during his relationship at the Jory Peterson office." In analyzing this question, the superior court stated it would focus "on the relationship, if any, between Bryant and the defendants herein, any time spent by Bryant working on behalf of defendants and his possible exposure to the formulation of *policy* or *strategy* in matters relating to the present matter." (See Vapnek et al., Cal. Practice Guide: Professional Responsibility, *supra*, ¶ 4:207.7, p. 4-63 [factors relevant to determining whether it was "reasonably likely" attorney obtained confidential information at prior firm].)

■ Where the modified version of the substantial relationship test has been met, the last step of the analysis is to determine whether the attorney whose disqualification is sought has carried "the burden of proving that he had no exposure to confidential information relevant to the current action

---

[5] The modified substantial relationship test is a situation-specific test that was derived from the broader inquiry into "whether confidential information material to the current representation would normally have been imparted to the attorney during his tenure at the old firm." (*Adams, supra*, 86 Cal.App.4th at p. 1340.)

while he was a member of the former firm. [Citation.] That burden requires an affirmative showing and is not satisfied by a cursory denial." (*Adams, supra*, 86 Cal.App.4th at p. 1341.) In this case, the superior court reached this step and stated the following: "Therefore, after a due and full consideration of all the evidence submitted, the Court finds that plaintiff has conclusively proven that confidential information material to the present representation was not imparted to him, nor was he exposed to any significant extent during his tenure at Jory Peterson."

As a result, the superior court denied the motion to disqualify plaintiffs' counsel.

### C. *Written Order Need Not Explicitly Analyze All Material Facts**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V. *Findings Are Supported by Substantial Evidence*

Fordel and Peak Harvesting contend the evidentiary record does not support the superior court's determination that attorney Bryant carried his burden of proof regarding his lack of exposure to confidential information.

### A. *Monday Meetings*

In challenging the superior court's factual analysis, Fordel and Peak Harvesting argue the superior court "misconstrued the target attorney's declaration as it related to the weekly luncheon meetings . . . ." In particular, Fordel and Peak Harvesting assert that Bryant's declaration indicates that he did not recall anyone discussing plaintiffs' cases at the Monday lunch meetings and the superior court treated the lack of recollection as a flat denial of his attendance at any meeting where plaintiffs' cases were discussed. Fordel and Peak Harvesting argue that this lack of recollection is not the "affirmative showing" required by the court in *Adams*. In that case, the court stated: "[T]he attorney whose disqualification is sought should carry the burden of proving that he had no exposure to confidential information relevant to the current action while he was a member of the former firm. (See ABA Model Rules, rule 1.9, com. [7].) That burden requires an affirmative showing and is not satisfied by a cursory denial." (*Adams, supra*, 86 Cal.App.4th at pp. 1340–1341.)

---

*See footnote, *ante*, page 898.

In this case, the superior court considered the declaration of Parkin, which said that he did not recall whether Bryant attended any lunch meeting where this case was discussed, and the declaration of Bryant, which set forth his recollection that the case was not discussed at the meetings he attended. The superior court specifically found "the Bryant denials to be *credible and persuasive* and anything but cursory."

■ The superior court's characterization of Bryant's declaration as affirmatively or flatly denying that he was at a lunch meeting where this case was discussed does not establish an erroneous analysis of the declarations. A review of the hearing transcript shows that the superior court fully appreciated the difficulty associated with proving a negative (in this argument, no exposure at meetings attended). Furthermore, if we were to accept Fordel and Peak Harvesting's position regarding what was required to carry the burden of proof, then Bryant could carry that burden only if he stated that (1) he recalled every matter discussed at every meeting he attended and (2) this case was not discussed when he was present. Such a high threshold is not appropriate. Witnesses must necessarily rely on their memories and it falls within the province of the superior court, sitting as the trier of fact, to resolve whether the recollections of a targeted attorney are reliable enough to carry the burden of proof imposed under *Adams.*

■ Consequently, under the circumstances presented in this appeal, we will not disturb the superior court's resolution of factual issues that arise from the competing declarations and concern what did and did not happen at the Monday lunch meetings. (*Rosenfeld, supra,* 235 Cal.App.3d at pp. 572–573.)

B. *Computer Files Accessed*

Fordel and Peak Harvesting argue the superior court gave too little consideration to Bryant's accessing electronic files related to them on the Jory Peterson computer system. The superior court specifically found that Bryant viewed certain of the documents after they were filed and served and, thus, those documents could not contain confidential information. Further, the superior court found Bryant's explanation of his activities on the computer system was true. Thus, as to documents not filed or served, the superior court impliedly found that the documents did not contain confidential information material to the representation of plaintiffs.

We conclude that the declarations and accompanying exhibits constitute substantial evidence that supports the findings made by the superior court concerning documents on the computer system.

VI. *The Role of Opportunity and Access in Applying the Modified Substantial Relationship Test*

Fordel and Peak Harvesting contend that the superior court's application of the modified substantial relationship test was tainted by legal error because it incorrectly stated the burden placed on the firm-switching attorney.

Specifically, Fordel and Peak Harvesting argue the firm-switching attorney has the burden of showing "that there was no *opportunity* for confidential information to be divulged." (*City National Bank v. Adams* (2002) 96 Cal.App.4th 315, 327–328 [117 Cal.Rptr.2d 125].) Based on this principle, Fordel and Peak Harvesting conclude that where the opportunity for acquiring confidential information exists, disputes over whether confidential information actually was imparted must be resolved in favor of disqualification.

The *City National Bank v. Adams* case is distinguishable from this appeal because that case involved a former attorney-client relationship that was direct,[7] not peripheral, and thus involved the application of the substantial relationship test, not the modified version of that test.

In situations where the modified substantial relationship test applies, the correct rule of law is set forth in the decision that first identified the "modified" version of the substantial relationship test. Specifically, the attorney whose disqualification is sought has "the burden of proving that he had no exposure to confidential information relevant to the current action while he was a member of the former firm. [Citation.] That burden requires an affirmative showing and is not satisfied by a cursory denial." (*Adams, supra,* 86 Cal.App.4th at p. 1341.)

 In other words, whether described as *access*[8] to confidential information or as the *opportunity to acquire* confidential information, that factor

---

[7] The direct relationship was particularly strong because the lawyer undertook to represent a new client in a matter that "involve[d] the work the lawyer performed for the former client." (*City National Bank v. Adams, supra,* 96 Cal.App.4th at p. 328.)

[8] Some confusion about the role access plays in the analysis of motions to disqualify counsel can arise when the following statement by our Supreme Court is misconstrued: "Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm. [Citation.]" (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283 [36 Cal.Rptr.2d 537, 885 P.2d 950].)

This statement is not authority for the proposition created by inverting the presumption—i.e., mere access to confidential information always creates a substantial relationship that mandates disqualification. Further, references to "access" in the *Flatt* case should not be

alone is not a sufficient basis for finding or conclusively presuming that "confidential information material to the current representation would normally have been imparted to the attorney during his tenure at the old firm." (*Adams, supra,* 86 Cal.App.4th at p. 1340.)

## VII. *Denial of Deposition Was Not an Abuse of Discretion*

Discovery orders are reviewed by appellate courts under the abuse of discretion standard. (*Tien v. Superior Court* (2006) 139 Cal.App.4th 528, 535 [43 Cal.Rptr.3d 121].) Under this standard, the superior court's determination will be set aside only when it has been demonstrated that there was no legal justification for the order denying the discovery requested. (*Ibid.*)

Fordel and Peak Harvesting argue that the superior court relied on cursory denials. The superior court disagreed with this characterization of the matters set forth in Bryant's declaration and stated his denials were anything but cursory. Bryant's declaration addressed point by point the matters raised in the motion to disqualify about the likelihood confidential information was imparted to him. We agree with the superior court that these were not cursory denials.

Fordel and Peak Harvesting also argue that Bryant's explanation of his activity on the Jory Peterson computer system needs to be explored. We disagree because the superior court found that the documents on that system that were accessed by Attorney Bryant did not contain material confidential information. The finding was supported by substantial evidence. Moreover, exploring Bryant's activity on the computer system will not affect the lack of confidential information in those documents.

Here, Fordel and Peak Harvesting have failed to demonstrate that there was no legal justification for the denial of their request to depose Bryant. Thus, we conclude that the superior court did not abuse its discretion.

## VIII. *Motions for Judicial Notice**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

applied beyond its factual context, which involved a direct relationship between the attorney and former client, rather than a peripheral one.

*See footnote, *ante,* page 898.

## DISPOSITION

The September 13, 2005, order denying the motion to disqualify is affirmed. Plaintiffs shall recover their costs on appeal.

Levy, J., and Gomes, J., concurred.